**George H. ANDERS, Appellant,**

v.

**R. L. TURNER, Warden, Central Prison, Appellee.**

**No. 11085.**

United States Court of Appeals Fourth Circuit.

Argued March 6, 1967.

Decided May 29, 1967.

John J. Kirby, Jr., Charlottesville, Va. (Court-assigned counsel), for appellant.

Theodore C. Brown, Jr., Staff Atty., Office of Atty. Gen. of North Carolina (T. W. Bruton, Atty. Gen. of North Carolina, on brief), for appellee.

Before SOBELOFF and J. SPENCER BELL[*], Circuit Judges, and SIMONS, District Judge.

SOBELOFF, Circuit Judge.

Holding that withdrawal of his appeal to the Supreme Court of North Carolina constituted a waiver of the claim that his guilty plea was not knowingly and intelligently made, the District Court denied George H. Anders' application for a writ of habeas corpus.

The indictment was for felonious breaking and entering and *non*-felonious larceny. The Superior Court of Gaston County imposed concurrent sentences of not less than seven nor more than ten years on the felony charge and two years on the misdemeanor. The very next day Anders, in a note to the trial judge, expressed a desire to appeal, and the judge conducted further proceedings in which Anders and his attorney participated. Anders gave as his reason for wishing to appeal that he was unaware he "would be given that much time by entering a guilty plea."[1] There ensued a colloquy between Anders and the court, and the judge noted the entry of an appeal and fixed the appearance bond at $15,000.00.

Following a conference with his counsel, however, Anders informed the court that he wanted to withdraw the appeal. After some questioning of the defendant, the judge ordered the appeal dismissed and directed the immediate issuance of a commitment so that Anders could begin serving his sentence. The record discloses—and it is not contested—that Anders elected not to pursue the appeal because he was financially unable to post bond and had been informed by the attorney that North Carolina would not credit against his sentence the estimated six months to one year he would have to remain in jail pending appellate decision.[2]

---

[*] Judge Bell participated in the hearing and concurred in the disposition of the case but died before the opinion was prepared.

1. The factual basis underlying Anders' misapprehension, on which he predicates his contention that the guilty plea was involuntary, will be developed hereafter in the text.

2. N.C.Gen.Stat. § 15–184 (1965 Replacement Volume) provides in pertinent part that:

"In criminal cases an appeal to the Supreme Court [granted as of right to a defendant convicted in the superior court by N.C.Gen.Stat. § 15–180 (1965 Replacement Volume)] shall not have the effect of vacating the judgment appealed from, but upon perfecting the appeal * * * there shall be a stay of execution during the pendency of the appeal. * * * If for any reason the defendant should wish to withdraw his appeal before the same is docketed in the Supreme Court, he may appear before the clerk of the superior court in which he was convicted and request in writing withdrawal of the appeal. The said clerk shall file and make an entry of such withdrawal and shall, if a sentence be called for, issue a commitment and deliver same to the sheriff. *The sentence shall begin as of the date of the issuance of the commitment.*" (Emphasis added).

The state contends that, notwithstanding § 15–184, the North Carolina Supreme Court has routinely allowed credit for time served in jail pending disposition of an appeal. *See, e.g.,* State v. Thompson, 268 N.C. 447, 150 S.E.2d 781 (1966); State v. Adams, 266 N.C. 406, 146 S.E.2d 505 (1966). *But cf.* State v. Weaver, 264 N.C. 681, 142 S.E.2d 633 (1965).

Decision of this case does not require resolution of the apparent conflict between the statutory language and the asserted judicial practice. We note, however, that it is Anders' understanding of the consequences of prosecuting an appeal, rather than the actual consequences, that would control in determining whether a waiver should be exacted. Moreover, the apparent conflict in state law has never been squarely faced by the state courts. In the cases cited to us, the North Carolina Supreme Court has merely, in passing, ordered that credit be allowed; there is no indication that issue was joined over the proper interpretation of § 15–184. Under the circumstances, we would be disposed to deem the language of the statute controlling. *Cf.* Stem v. Turner, 370 F.2d 895 (4th Cir.

■ Several months later, Anders unsuccessfully sought collateral relief in the state courts. After a full hearing, the post-conviction judge held that the petitioner had "tendered a plea of guilty of felonious breaking and entering and a plea of guilty of larceny of goods valued at less than two hundred dollars, and that such plea was freely and voluntarily given by him as well as by his attorney of record." On appeal, the North Carolina Supreme Court denied certiorari, and the present habeas petition followed.[3]

Anders' contention that his guilty plea was involuntary rests upon his uncontroverted assertion in the state post-conviction hearing that at trial he was under an honest misconception that he was pleading to misdemeanor charges only. The original indictment was for felonious breaking and entering and felonious larceny. Before trial, the felonious larceny count was reduced to non-felonious larceny, apparently because property at first thought missing was later discovered intact. Anders testified, without refutation, that he authorized his attorney to enter a guilty plea on the assumption that both counts of the indictment had been reduced to misdemeanors. He said:

"That's the reason I told Judge May the next day when I came back, he asked me, said, 'Why do you want to appeal?' I told him, I said, 'The reason is that I feel I was misled; that I didn't understand that I could receive this much time.' And I really didn't.

Of course, I'm not saying anything against Mr. * * * [Anders' trial counsel] on that, 'cause I didn't realize that the breaking and entering charge was still felonious breaking and entering. That's why I wanted to appeal at that time."

■ Anders' misunderstanding of the nature of the charges against him was reinforced by the trial judge, who, in seeking to insure the voluntariness of the guilty plea, inadvertently achieved the opposite effect by couching an inquiry to the traverser in the following language:

"your attorney * * * has entered a plea for you of breaking and entering and non-felonious larceny and that you authorize and empower and direct him to enter such plea for you."

There was no reason for Anders to respond in a fashion other than he did, which was a simple "Yes sir." We can hardly ascribe to him the knowledge that while under North Carolina law there are distinct offenses of felonious and non-felonious larceny, depending on the value of the goods taken, yet larceny by breaking and entering a store is a felony without regard to the amount stolen.[4] Informed that the felonious larceny count had been reduced to non-felonious larceny, and never apprised of the felonious nature of larceny by breaking and entering, Anders' assumption that a guilty plea would subject him to misdemeanor liability only was entirely natural. On

1966). At any rate, this was what the lawyer (not without reason) thought and told the appellant.

3. Anders proceeded under the North Carolina Post-Conviction Hearing Act, N.C. Gen.Stat. § 15–217 et seq. (1965 Replacement Volume), as amended effective July 1, 1965. Prior to amendment a plethora of remedies confronted a defendant attacking his conviction, the appropriate one depending upon the grounds of his challenge. Occasionally, a defendant would pursue an inappropriate state remedy, be denied relief, come into the federal district court on habeas, and be returned to the state courts to seek the

proper writ. See, e.g., Brown v. State of North Carolina, 341 F.2d 87 (4th Cir. 1965).

The 1965 amendments, however, abolished "all other common law and statutory remedies" and substituted a unitary § 15–217 proceeding in which all challenges to a conviction may be raised. There can be no question therefore that Anders has exhausted all presently available state remedies. See 28 U.S.C. § 2254.

4. The dividing line between felonious and non-felonious larceny, not perpetrated by breaking and entering, is $200.00. See N.C.Gen.Stat. § 14–72 (1965 Cum.Supp.)

the basis of the undisputed facts, we can conclude only that his plea was not understandingly and intelligently made. Under prevailing federal standards it is therefore void. See Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948); United States ex rel. Codarre v. Gilligan, 363 F.2d 961 (2d Cir. 1966). Cf. Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963).

Agreeing that the guilty plea was invalid, the District Court nevertheless held that Anders waived his valid federal claim by withdrawing the appeal to the state Supreme Court. This was the ruling despite the fact that in the post-conviction proceedings the state courts entertained and rejected Anders' claim on the merits, and did not declare a waiver on account of the withdrawal.[5]

■■■ Under these circumstances, we hold that the District Court exceeded the bounds of permissible discretion in imposing a forfeiture of the federal claim. No reason appears for a federal court to insist upon more exacting compliance with state procedures than the state courts themselves demand.[6] There would possibly be superficial plausibility to an argument that, since federal standards govern whether forfeiture of a federal claim can be predicated upon a deliberate bypass of state procedures, the state court's failure to decree a waiver would

---

5. The District Court stated that:

"This court is of the opinion that petitioner's considered election to withdraw his appeal waived his objection that the plea of guilty was not understandingly and intelligently made. If he did not know when he entered the plea the range of allowable punishment for the offenses, obviously he knew with certainty the consequences of his plea after the sentences were imposed and after he had consulted with his attorney. The effect of his election to withdraw his appeal and begin service of the sentences was a ratification of his guilty plea with full understanding of the consequences."

Rather than viewing withdrawal of the appeal as a procedural bar to the subsequent assertion of the involuntariness of the guilty plea in federal habeas corpus proceedings, the District Court might well be saying that the withdrawal, made in open court and in the company of counsel, constituted belated acceptance of the sentence—amounting to a waiver of the infirmity in the original plea and equivalent to a new, untainted guilty plea. For a discussion of the differing uses of the term "waiver," see ABA Project on Minimum Standards for Criminal Justice—Standards Relating to Post-Conviction Remedies 88–89 (Tent. Draft January, 1967).

Neither the State nor Anders urges this interpretation of the District Court's language, and we are therefore not called upon to decide whether so construing the sequence of events would comport with federal constitutional requirements. We note, however, that the reasons which motivated Anders to withdraw his appeal, an inability to furnish bail plus the understanding that North Carolina would not credit him with time spent in jail pending appeal, militate strongly against a finding that the withdrawal amounted to an "intentional relinquishment or abandonment of a known right or privilege," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, and evinced a desire to vitalize the original plea.

In addition, because it inhibits access to appellate review by indigent defendants, North Carolina's rule denying credit for time spent in jail pending appeal may be vulnerable to attack as an unconstitutional condition. The Supreme Court has consistently held that if a state provides a process for either direct or collateral attack of a conviction, it cannot permit the indigency of the defendant to affect access to that procedure. See e. g., Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 18 L.Ed.2d 290 (1966); Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Eskridge v. Washington State Board, etc., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Cf. Dunn v. United States, 376 F.2d 191 (4th Cir. 1967).

6. See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, n. 3 (U.S. May 29, 1967).

not prevent a federal court applying federal standards from so doing. This analysis, however, would completely ignore the purpose underlying the Supreme Court's recognition in Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), of a limited discretion in the district court to "deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state remedies."

This narrowly confined discretion was designed to foster harmonious federal-state relations in the administration of criminal justice by permitting a federal habeas court to accord controlling effect to a state's insistence upon compliance with reasonable procedural rules which promote legitimate state interests. By way of illustration, a defendant for *tactical* reasons permits the introduction at trial of illegally seized evidence without interposing a contemporaneous objection, as required by state law, and the state court subsequently refuses to entertain his federal constitutional claim that the evidence was inadmissible. Given these facts, a federal district court on habeas may deny relief if it determines that the contemporaneous objection rules serves a legitimate state interest.[7]

█ But when, as in the present case, the state court has not declared a waiver or forfeiture, a federal court is not at liberty to search the state proceedings to identify a legitimate state interest upon which the state court itself has not relied. The federal court's discretion to impose a forfeiture is limited to those instances in which a state court has demonstrated the existence of a legitimate state interest and has sought to vindicate it. As the Supreme Court said in Fay v. Noia, 372 U.S. at 439, 83 S.Ct. at 849:

"If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief *if the state courts refused to entertain his federal claims on the merits*—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default." (Emphasis added.)[8]

The North Carolina courts having entertained Anders' federal claim on the merits, the District Court erred in imposing a forfeiture. As we have shown, the District Court correctly found that Anders' guilty plea was involuntary; this finding should accordingly have been given legal effect. It follows that the case must be remanded with directions that the writ issue and the prisoner be discharged unless the state elects to retry him within a reasonable time.[9]

Reversed and remanded with instructions.

---

7. *Cf.* Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (direct review).

8. Accord Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, n. 3 (U.S. May 29, 1967). See also Wright & Sofaer, Federal Habeas Corpus for State Prisoners: The Allocation of Fact-Finding Responsibility, 75 Yale L.J. 895, 961–962 (1966).

9. At the state post-conviction hearing, Anders claimed other defects in the procedure by which he was convicted and sentenced, none of which were pressed on appeal.