**Robert Tobias THOMAS, Petitioner,**

v.

**William D. LEEKE, Director, South Carolina Department of Corrections, and Daniel R. McLeod, Attorney General of the State of South Carolina, Respondents.**

**Civ. A. No. 73–1284.**

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 17, 1975.

Daniel A. Speights, Columbia, S. C., (Court-appointed), for petitioner.

Emmet H. Clair, Asst. Atty. Gen., Columbia, S. C., for respondents.

## ORDER

SIMONS, District Judge.

This matter is now before the court on petitioner's motion to amend or alter this court's order entered on July 12, 1974, denying the petitioner habeas corpus relief. Pursuant to the filing of this motion, the court, by order dated November 19, 1974, ordered an evidentiary hearing "to take evidence relating to the in-court visual identification of the petitioner by the witness Kiker, and the voice identification of the petitioner by the witness Walters at the jail house." At the hearing on December 2, 1974, petitioner's court-appointed counsel advised the court that with regard to the voice identification of the petitioner by the witness Walters, the petitioner would rely on the record. Thereafter, testimony was taken from the witness Kiker concerning her in-court identification. Counsel for the respondents then called the petitioner to the stand and questioned him concerning the jailhouse voice identification by the witness Walters. The facts of the case and the history of petitioner's various appeals and petitions to the state and federal courts are thoroughly reviewed in this court's order of March 6, 1974, in which the court accepted jurisdiction over the merits of petitioner's application, and need not be further reviewed here.

At the completion of all testimony at the evidentiary hearing, the respondents asserted for the first time that the petitioner had waived his right to challenge the constitutionality of the subject identifications by not objecting to the same at the time of trial. In response to this assertion, counsel for the petitioner contended that the respondents had waived the right to raise the question of waiver, and further that if the respondents could inject such an issue into the pro-

ceedings, petitioner should be allowed to refute such claims by challenging the competency of his retained counsel.

By order dated February 24, 1973, the Honorable Robert W. Hayes, Resident Judge of South Carolina's Sixteenth Judicial Circuit, denied the petitioner's application for post-conviction relief on the grounds that there was "no evidence to support the applicant's contention that her (Mrs. Kiker's) identification was tainted by a pretrial confrontation", and because he could find no support for the allegation that "the in-court identification by Walters was in any way influenced by his pretrial meeting with the applicant." There is no indication in Judge Hayes' order that he relied upon the failure of the petitioner's counsel to object to this testimony as a basis for denying him relief.

█ This court concludes that, in such a case, the district court may properly consider the constitutional questions raised by the petitioner on the merits. Hayden v. Warden, Maryland Penitentiary, 363 F.2d 647 (4th Cir. 1966), reversed on other grounds, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Anders v. Turner, 379 F.2d 46 (4th Cir. 1967).

The court does not feel that respondents at this late date should be permitted to raise the new issue that petitioner has waived his constitutional objections to the subject identifications. It has now been over three years since petitioner first attempted to raise constitutional questions concerning the identifications, during which time the respondents have relied solely on the position that the petitioner's constitutional rights were not violated. Prior to the evidentiary hearing held pursuant to order of this court, the respondents had never suggested that the petitioner waived his right to challenge the subject identifications by not objecting to them at trial. Indeed, in response to petitioner's motion to alter or amend, respondents advised the court by letter dated August 14, 1974, that "the relevant facts in our opinion were pointed out in our return and the

court cited the controlling authority in disposing of the matter." Thus, the respondents adopted the previous order of this court as their position, which order, just as Judge Hayes' previous order, treated the petitioner's claims on the merits.

██ The court is as bewildered by the state's failure to raise the question of waiver at an earlier time, as it is by the failure of petitioner's retained counsel to challenge the subject identifications at trial; however, it is not the duty of this court to look behind the reasons for these omissions, be they for tactical reasons or by mere inadvertence. Just as the petitioner is precluded from presenting issues before this court which he did not raise in the state court proceedings, the court will not allow the respondents to come in on a motion to alter or amend and urge a new defense to petitioner's action.

Having disposed of the new issues raised by the respondents, the court now undertakes to look once again at the two identifications challenged by the petitioner.

█ The testimony of Mrs. Kiker at the evidentiary hearing reinforces this court's previous ruling that her in-court visual identification of Thomas was not violative of due process. She stated that she had not seen the petitioner at any time between the robbery and the trial, that she had not discussed her testimony with anyone prior to trial, and that she had been subpoenaed the night prior to her testimony. She further stated that her only discussion of the case prior to trial occurred when she ran into the investigating police lieutenant while paying a traffic ticket some time after the robbery. At that time she told the lieutenant that she would recognize one of the robbers anywhere, even though his facial features were distorted by a stocking, because she had stood shoulder to shoulder with him and had taken a good look at him twice during the robbery.

She stated that at the original trial she sat in the courtroom and recognized the petitioner when he came through the door leading to the judge's chambers. She stated he was well dressed in a sport coat and tie, was not handcuffed, and accompanied by several other men similarly attired.

Neither the trial record, nor the testimony given at the evidentiary hearing held by this court lend any support to petitioner's contention that Mrs. Kiker's identification was the product of an illegal confrontation. She was positive in her identification, stating that when she saw petitioner enter the courtroom "I knew he was the man who stood next to me", and that she was ". . . as sure as a human being can be". The court again concludes that the petitioner was not denied due process of law when the jury credited her testimony.

The second point which the court has agreed to reconsider is petitioner's assertion that the pretrial voice identification of him by the witness Walters denied him his constitutional right to effective assistance of counsel and due process of law. The court now concludes that there is merit to this contention of petitioner.

■ This court stated earlier that Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), "limited the proscription of uncounseled identification and testimony related thereto, under the *Wade-Gilbert* rule,[1] to pretrial identifications had after adversary judicial proceedings had been initiated against the defendant." While this is undoubtedly the law, the court feels it must be viewed, in this case, in light of a unanimous Supreme Court decision which defines the "criminal prosecution" requirement of the Sixth Amendment. In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the court ruled that the Sixth Amendment right of a fugitive defendant to a speedy trial becomes applicable when in some way he becomes an accused. As stated by the Court:

(I)t is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engaged the particular protections of the speedy trial provision of the Sixth Amendment.

Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. 404 U.S. 307, at 320–321, 92 S.Ct. 455, at 463, 30 L.Ed.2d 468.

It could hardly be argued that the term "criminal prosecution" in the Sixth Amendment means one thing for the right to a speedy trial and another thing for the right to the assistance of counsel. The *Kirby* decision does not require such a distinction. It only recognizes that there is a limit in the criminal process where the Constitution requires the assistance of counsel, and that it would be unrealistic to direct law enforcement officials to furnish counsel at every point in their investigations. When for all intents and purposes the suspect becomes an accused, the language of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), is still applicable:

It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment. Petitioner had, for all practical purposes, already been charged with murder. 378 U.S. 478 at 486, 84 S.Ct. 1758, at 1762, 12 L.Ed.2d 977.

■ A review of the trial record reveals that Lieutenant Burrell testified that on the day of petitioner's arrest he received a telephone call from Atlas Key, who told him that he and the petitioner

---

1. United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

had robbed the Handy Pantry. Thereafter, he and the petitioner were arrested under a warrant charging them with another robbery. After the petitioner had been placed in his cell, Walters was summoned to the jail for the purpose of identifying the petitioner. At this point, the court finds that Key and the petitioner had become the subjects of the prosecution. The following testimony of Lieutenant Burrell indicates that the petitioner and Key were actually charged with the crime at the time of the voice identification by Walters.

Q. Lieutenant Burrell, the statement that you received from Mr. Walters, was that on the 19th?

A. Yes, sir, I believe it was.

Q. And that was made after he had been to jail?

A. Yes, sir.

Q. Before the arrest on this charge?

A. No, sir, they had been arrested.

Q. On this charge?

A. Warrants had not been served on this particular charge but they were a little later.[2]

Whatever the formal state of the pleadings might have been at the precise moment Walters was taken to the petitioner's cell, the police already had probable cause to charge the petitioner with the robbery of the Handy Pantry based on his co-defendant's admission. Lt. Burrell's testimony does not reflect that he ever considered the identification of Walters to be a prerequisite to charging the petitioner. Thus, unlike *Kirby*, where the police had to identify the accused or release him; in the instant case, where the petitioner was already safely in jail on another charge, there was no urgency to expedite other formal proceedings against him. There was no justification in the present case for the police to conduct an immediate identification confrontation when they already had probable cause to hold the petition-

er. It would be a hollow Sixth Amendment right if the police could avoid the presence of counsel merely by postponing the approval of a disinterested magistrate for an already legal arrest. *Cf.* Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

The fact that petitioner was under arrest for a different crime did not deny him the right to counsel at the subject confrontation. The court is persuaded by Saltys v. Adams, 465 F.2d 1023 (2nd Cir. 1972), a post-*Kirby* decision in which the United States Court of Appeals for the Second Circuit stated:

This particular confrontation was, as we have said, at a "critical stage," at least in the sense that petitioner was suspected of complicity in the crime, was in custody albeit for another crime, and had been identified in photographs by the two witnesses who then viewed him in person.[6]

6. Whether the arrest were for the crime in dispute or, as here, for a different crime is irrelevant to the "critical stage" question. In either case a person is in custody, and there is no reason for the police to use an informal and suggestive procedure without counsel when a proper one with counsel could be arranged. 465 F.2d 1023, 1027.

The *Saltys* opinion is consistent with the Supreme Court decision in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), which held that for purposes of safeguarding Fifth Amendment rights, it makes no difference whether the person questioned is in custody for another crime.

As Walters' testimony at trial was limited to the jailhouse voice identification, the court in finding that the petitioner was entitled to assistance of counsel at that time must apply a *per se* exclusionary rule to the subject identification. Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

Even were the court to find that petitioner was not entitled to counsel at

the one-on-one jailhouse confrontation, *Kirby, supra,* requires that *any* pretrial identification confrontations which occur before the right to counsel attaches must also be evaluated by due process standards, and here, where law enforcement officials had notice of the preferred identification procedures set forth in the *Wade-Gilbert* decisions, such confrontations must be judged by even stricter due process standards. Smith v. Coiner, 473 F.2d 877 (4th Cir. 1973).

█ The court considers that the test to be applied to pre-*Wade-Gilbert* identifications is whether "judged by the 'totality of the circumstances,' the conduct of identification procedures may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process." Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969), quoting from Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967).[3]

█ The stricter test to be applied to post-*Wade-Gilbert* identifications is merely whether the confrontation is "suggestive," and, if so, whether the confrontation is justifiable under the circumstances. Smith v. Coiner, *supra.*

In its earlier order, this court in finding that the petitioner was not denied due process of law relied primarily on the recent Fourth Circuit decision Stanley v. Cox, 486 F.2d 48 (4th Cir. 1973), wherein Judge Russell set forth the following scholarly analysis:

The real issue . . . turns on whether the one-on-one pretrial identifications of the petitioner were violative of due process. Although pretrial show-up identifications have been criticized under some circumstances, as the petitioner contends, there is no *per se* rule that they are violative of constitutional rights. There are, however, very definite due

process standards which such show-ups should meet, if they are to avoid a finding of constitutional invalidity. A show-up identification meets those due process standards, as established under the Fifth and Fourteenth Amendments if, taking into consideration the "totality of circumstances" surrounding it, it is found to be not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the defendant fundamental fairness. . . .

But whether a particular show-up satisfies the requirements of a reliable prompt confrontation under due process depends on the consideration of a number of factors. These have been authoritatively stated to be "the opportunity of the witness to view the criminal at the time of the crime, the witnesses' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (Quoting from Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). 486 F.2d at 50, 51.

After reviewing other one-on-one confrontation cases, Judge Russell concluded:

In sum, what all these cases demonstrate is that . . . every case must be resolved on its own unique facts, and that, where after a weighing of all relevant facts surrounding the identification, including the time and place of confrontation, it is concluded that the show-up was not "unnecessarily suggestive", testimony of the show-up identification is admissible. And we think this is a sound result, which will not invalidate what is, when properly used, a useful identification procedure simply because of the difficulties of applying the relevant rule as stated in *Stovall* to the facts

---

**3.** In *Stovall,* the Supreme Court refused to apply the *Wade-Gilbert* rule retroactively, but ruled that earlier pretrial confrontations must be evaluated by due process standards.

of a particular case. 486 F.2d at 52–53, footnotes omitted.

 While the court was originally satisfied that, measured by the above standards, the voice identification in question met minimal requirements of due process, now after again reviewing the applicable cases hereinabove and hereinafter cited, and considering all of the circumstances disclosed by the present record, the court is convinced that the voice identification of petitioner under such circumstances was "unnecessarily suggestive."

In Smith v. Coiner, *supra,* the petitioner was accused of raping a woman in her own bedroom. Several hours after the attack, the police found the petitioner in the prosecutrix's bed and took him to the doctor's office where he was identified by the prosecutrix. The court found that the State had failed to justify the necessity for a one-on-one confrontation. As stated by Judge Winter, 473 F.2d at page 881:

The prosecutrix was in no physical danger at the time that the confrontation in the doctor's office took place and that office was only a short distance from the police station. At the time that Smith was exhibited to her he was handcuffed and escorted by two uniformed police officers. The manner of exhibition, although properly motivated by considerations of security, thus carried with it an implied suggestion by the police that they believed Smith was the guilty party. There is no claim that the prosecutrix would have been unable to attend a lineup when she left the doctor's office or thereafter, and there is no suggestion that the identification in this case was part of an on-the-scene immediate investigation such as has been held unobjectionable in other cases.

. . .

In short, there was no justification for incurring the inherent suggestiveness of a one-to-one confrontation under the circumstances described, nor was there any reason why a traditional and non-suggestive lineup could not have been employed . . . .

The instant case involves a one-on-one post-*Wade-Gilbert* confrontation at least as suggestive and unjustified as the one in *Smith.* The arresting officer himself testified that he told the witness Walters that he was taking him back to petitioner's cell so that Walters could identify "the voice of the man who robbed them".[4] While the petitioner in *Smith* was exhibited while he was handcuffed, the petitioner herein was viewed while he was alone in his jail cell. There is no question about the health of the witness in the present case, and the identification certainly could not be considered part of an immediate on-the-scene identification since it took place some forty days after the robbery.[5]

Still another decision of the Fourth Circuit Court of Appeals weighs heavy in this court's decision to alter its original order. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), where the Supreme Court recognized for the first time that pretrial identification procedures are subject to the due process clause, the sole authority cited for this proposition was the *en banc* unanimous opinion in Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966).

In *Palmer,* the prosecutrix was raped by a man wearing a heavy paper clothespin bag which fit snugly over his head. The following day, the police arrested the petitioner and took him to the police station where the prosecutrix listened to him talk in an adjoining room and identified his voice as that of the man who raped her. Although the clothespin bag

---

4. Page 94, Trial Transcript.

5. *Smith,* as the instant case, involved a post-*Wade-Gilbert* identification, whereas *Stanley* involved a pre-*Wade-Gilbert* identification. However, the court in *Smith* as-

sumed for argument purposes that the pre-*Wade-Gilbert* test applied and found a confrontation which took place only five hours after the crime could not be considered part of an on-the-scene immediate investigation.

was in the possession of the Sheriff, it was not used during the identification. Thereafter, the prosecutrix testified at trial that she had made the station house voice identification, but made no attempt to identify the petitioner in open court. The language of the *en banc* unanimous court in declaring this procedure violative of due process is especially relevant to the instant case. As stated by Judge Sobeloff at pages 201–202:

> Any identification process, of course, involves danger that the participant may be influenced by prior formed attitudes; indeed we are all too familiar with instances in which supposedly "irrefutable" identifications were later shown to have been incorrect. Where the witness bases the identification on only part of the suspect's total personality, such as height alone, or eyes alone, or voice alone, prior suggestions will have most fertile soil in which to grow to conviction. This is especially so when the identifier is presented with no alternative choices; there is then a strong predisposition to overcome doubts and to fasten guilt upon the lone suspect.

To alleviate the effect of such influences upon a complaining witness, a lineup is generally regarded by police authorities as essential. Where the identification is by voice alone, the absence of some comparison involves grave danger of prejudice to the suspect, for as one noted commentator has pointed out:

> "[E]ven in ordinary circumstances we must be cautious and accept only with reserve what a witness pretends to have heard. All the more must it be so if there are special difficulties in the way—if, for example, the voice comes from a great distance, if it is shrill, muffled, or presents any other peculiarity. The same is true if the person whose voice has been heard is of a different nationality from the listener, if he speaks another dialect, or is better or less educated. Criminal Investigation, Jackson ed. (5th ed. 1962), at 41–42."

Mrs. Britt's assailant was of a different race, and spoke through a heavy paper clothespin bag which doubtless muffled his voice; yet this same paper bag, in the possession of the police, was not worn by Palmer on the night of the identification.

Sheriff Early himself stated that the use of lineups was standard practice in Nansemond County. In fact, the evening before the arrest he had himself arranged a voice identification lineup for Mrs. Britt, making four or five voices available for comparison. When asked why this procedure was abandoned the following night for Palmer's identification, the Sheriff at first answered that he really had no reason, then testified merely that "I didn't want her to see him." But he still offered no explanation for the failure to afford Mrs. Britt at least a choice among several voices, rather than concentrating solely on Palmer's.

Unquestionably, the most telling piece of evidence in the record was the narration of the events in the station house. Yet at this most critical point in the proceedings against him —the voice identification—Raymond Palmer was deprived of the most elementary safeguards of the law. In their understandable zeal to secure an identification, the police simply destroyed the possibility of an objective, impartial judgment by the prosecutrix as to whether Palmer's voice was in fact that of the man who had attacked her. Such a procedure fails to meet "those canons of decency and fairness" established as part of the fundamental law of the land. A state may not rely in a criminal prosecution upon evidence secured by pumping a man's stomach, by breaking into his home, or by employing subtle psychological methods on him; nor may it rely on an identification secured by a

process in which the search for truth is made secondary to the quest for a conviction.

In the instant case the petitioner was in custody for another charge when the voice identification was made, after he had already been identified by the accomplice Key as one who had participated in the robbery. Thus the officer had probable cause for his arrest on these charges, and he remained in custody until formal charges were placed against him shortly thereafter. There was therefore no necessity or reason for such an immediate one-on-one voice identification at that time. The circumstances under which the identification was made were very suggestive, since officer Burrell stated to Walters as he led him to petitioner's cell that he wanted him to identify one of the persons who had committed the robbery. It is also quite significant that the voice identification was made by Walters at a time when petitioner did not have a stocking over his head as both the two robbers admittedly had when the robbery occurred. It is apparent that a stocking over one's head sufficient to prevent identity would not only distort one's physical appearance and features, but also substantially affect his spoken words.

The authority of *Palmer supra*, considered in the light of the more recent Fourth Circuit decisions (Smith v. Coiner, *supra*, and Stanley v. Cox, *supra*), compels the court to now hold that the "totality of the circumstances" surrounding Walters' one-on-one voice identification of petitioner was unduly suggestive and constitutionally infirm, in that petitioner was entitled to counsel at this "critical stage" of the proceedings, and he was denied due process of law.

In summary, the court finds that:

(1) The petitioner was effectively "accused" of the subject crime and therefore entitled to the benefit of counsel at the one-on-one jail house confrontation; and

(2) The voice identification was so unnecessarily suggestive that the petitioner was denied his constitutional right to due process of law.

Therefore, for the reasons stated above, the petition for the writ of habeas corpus is hereby granted, and it is hereby

Ordered that petitioner be released unless the State affords him a new trial untainted by the voice identification testimony within ninety (90) days of the filing of this order.[6]

6. The issues as to identity considered herein by this court which have resulted in the granting of a new trial to the petitioner were never considered on the merits by the State Supreme Court, as these issues have never been directly presented to that court. This court is confident that the State's highest court would have agreed with the determinations herein if it had been given a proper opportunity to consider such issues. As stated by this court in its order dated March 6, 1974, following his conviction petitioner appealed to the State Supreme Court, asserting only three issues, none of which involved his identification at trial. After filing a petition with this court, which was dismissed for failure to exhaust state remedies (Thomas v. State of South Carolina, Civil No. 71–656 (D.S.C. filed August 31, 1972)), petitioner filed an application for post-conviction relief in the York County Court of Common Pleas. By order dated February 24, 1973, Judge Hayes, as Resident Judge of the Sixteenth Judicial Circuit, dismissed the application without an evidentiary hearing as being without merit. Petitioner thereafter filed a notice of intention to appeal, however, such notice was outside of the ten-day limit as set forth in Section 7–405 of the 1962 South Carolina Code of Laws. The South Carolina Supreme Court decisions have consistently held that such ten-day period within which to file notice of intent to appeal is a jurisdictional bar. Therefore, as this court concluded that petitioner had exerted a good faith attempt to appeal to the South Carolina Supreme Court and that his delay in filing his Notice of Appeal to that Court from Judge Hayes' order was not an intentional by-pass of available state court procedures, this court concluded that there was "an absence of available state corrective process" within the meaning of the federal habeas corpus statute, and that petitioner

It is further ordered that the order of this court entered July 12, 1974, is hereby amended to conform with the provisions of this order.

The Clerk is directed to promptly provide copies of this order to the parties and their respective counsel.[7]

had effectively exhausted his state remedies. Thereupon this court accepted jurisdiction of the merits of this controversy.

7. The court again expresses its appreciation to Daniel A. Speights, Esquire, for his most able representation of the petitioner by court appointment in this matter.