[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 70 
Michael E. Donahoo was tried and convicted for rape by a jury in Jefferson County and sentenced to thirty years imprisonment.
In the early morning hours of December 4, 1975, the victim, having left her job as a part-time waitress, drove to the Raleigh Villa Apartments located in the Homewood section of Jefferson County, Alabama. On her arrival, she went to her sister's apartment on the second tier of the three tier apartment complex and knocked on the door, but no one answered. As she stood in the hallway, she heard what sounded like the opening and closing of a door on the floor above her. A moment later, she heard something behind her, turned, and saw a man wearing pantyhose over his head running toward her.
According to the victim, the man grabbed her and began choking her. He told her to "shut up" or he would kill her. She was led to her automobile, a 1974 blue Honda, where the man requested her keys. After unlocking the car door, he pushed her into the car and drove to an area in the apartment complex near the tennis courts. The victim testified that he parked the car, "reached over and put his hand down [the] top" of her clothing. She stated that, when she objected, he again grabbed her around the throat and started choking her "real hard," and told her that, if she did not do what he said, he would kill her.
The victim claimed that her assailant had no weapon other than his hands and described him as being "bigger" than she was. She said she was afraid of him at that time, and that, following his directions, she climbed into the back seat, where he removed her shoes and underclothes. He had sexual intercourse with her without her consent. Subsequently, the assailant returned to the driver's seat and ordered her to return to the front seat also. Then, as he drove back to the apartment building, he asked her her name and told her, among other things, that "he really didn't have to do this sort of thing but he was bored . . `look at it this way, it is better to be raped by me than a pimple face fagot.'"
Upon reaching the apartment, the victim remained in her car while her assailant got out and walked away. She got out of the car and looked in the direction her assailant had walked. She saw the man stop, remove the pantyhose from his head and look at her. She told the court, "I stopped momentarily and looked around and he was looking at me and I was looking at him and then I ran up stairs to sister's apartment." She stated further that, as she was knocking on her sister's apartment door, she heard "someone come in the other door that's on the two-level side, went up the stairs and into their apartment." When her sister answered the door, she reported what had happened, and the police were called.
During the trial, the prosecution asked the victim whether she recognized the person who had assaulted her. At that point, the court interrupted, removed the jury, and held a hearing on a motion to suppress the in-court identification on the grounds that it was impermissibly suggestive. Testimony was taken from the victim, Lieutenant Thomas A. Jacobs and Sergeant H.M. Wade.
At the conclusion of the hearing, the court overruled the motion, and the victim made a positive in-court identification of the appellant as her assailant.
She stated that, after the police arrived, she gave them a description of her assailant and his clothing. Further, she said that she later identified his voice and some of his clothing as the clothing her assailant was wearing when she was assaulted.
During cross-examination, the victim said that, when she got out of the car and *Page 71 
walked toward her sister's apartment, her assailant had stopped, removed the pantyhose from his head, turned, and looked at her. She also testified that she had noticed the man's hands and that he did not have on any rings, or a watch. She stated that the color of his shirt had stuck in her mind: ". . . I do remember distinctly the navy blue on the cuffs."
Harry M. Wade, Jr., a sergeant with the Jefferson County Sheriff's Department, testified that he investigated the "possible rape" at the Raleigh Villa Apartments, in the early morning hours of December 4, 1975. He stated that he arrived at the apartments about 3:10 A.M., talked with the victim, and then went to an apartment in the same building, occupied by Ms. Vanessa Gant and the appellant. According to Wade, Ms. Gant told him that the appellant had not been in their apartment all night. She stated that he had gone for a walk about 1:00 A.M. and that she did not know when he returned because she was asleep. Wade then advised Ms. Gant that the appellant was a suspect in an assault.
Wade testified that he and Lt. Jacobs were then invited into the apartment and that they advised the appellant, who was sitting in the living room, of his rights. Lt. Jacobs took one of the appellant's shirts downstairs to the victim, but subsequently returned and got another. Wade stated that Jacobs took the second shirt downstairs and that, when he returned, the appellant was taken into the hallway where Wade engaged him in conversation for approximately ten minutes. Lt. Jacobs then returned from the apartment below and placed the appellant under arrest.
The appellant was escorted downstairs to a patrol car parked in front of the apartment building. Wade recalled that he and Lt. Jacobs then took the victim to a window overlooking the parking lot and she saw the appellant walking toward the patrol car. According to Wade, from that vantage point, she observed the appellant in front of the patrol car, with the headlights from another car shining on him. At that time, the victim identified the appellant as her assailant.
Sgt. Wade also testified that, after the victim was taken to the hospital, he and Deputy James Howell returned to the victim's car and that Deputy Howell unlocked and examined the inside of the car. Further, Wade stated that a search of the outside area was conducted, but he did not recall "exactly when it took place."
James H. Howell, a deputy sheriff with the Jefferson County Sheriff's Department and an evidence technician, testified that, on December 4, 1975, he went to the Raleigh Villa Apartments and lifted "latent prints" from a 1974 Honda. Three latent fingerprints were taken from the steering wheel, one from the left door handle, and two from the left door glass." Howell testified that these fingerprints were compared with those of the appellant and it was his opinion that they were from the same person. Howell also stated that he had received a pair of pantyhose and one shirt from Lt. Jacobs, two pairs of pants from Sgt. Wade.
At the end of Howell's testimony, the State completed its case, and the appellant made a motion to exclude the State's evidence on the grounds that it failed to make out a prima facie case. The motion was overruled and the appellant took the stand in his own behalf.
Michael Donahoo testified that on the date in question he was living at the Raleigh Villa Apartments with Vanessa Gant, who was his wife at the time of the trial. He stated that on the night in question they had had some visitors, and that, about "twenty minutes til one," he and Ms. Gant had driven to a gas station on the Green Springs Highway to buy cigarettes. According to the appellant, the gas station was approximately "a mile and a half" away. When they returned, he stated that he took a walk, because "my sinuses [were] bothering me." He described the clothing he was wearing that night and denied seeing the victim on that occasion, being in her car, or raping her.
During cross-examination, the appellant stated that he had not seen the victim on *Page 72 
the night in question and had not seen her automobile. Further, he denied touching the car, sitting inside it, turning the steering wheel, or driving it. He also denied telling Ms. Gant, prior to taking a walk, that the reason he was going was that he was bored.
Vanessa Gant Donahoo, the wife of the appellant, testified that, on December 4, 1975, she was living with the appellant at the Raleigh Villa Apartments. She stated that, on the night in question, they had had visitors who had remained until about 11:00 P.M. She also stated that, after she and the appellant returned from buying cigarettes, the appellant had left the apartment about "five 'til one." She described the clothing that the appellant was wearing that night.
During cross-examination, Mrs. Donahoo denied telling the two police officers that the appellant had left about 1:30 or 2:00 A.M. to go for a walk because he was bored. She also denied telling the police officers that she had been asleep and did not know when he returned.
Lt. Jacobs, recalled in rebuttal, testified that Vanessa Gant had stated on the night in question, in the accused's presence, that: "Her boyfriend, Michael Donahoo, left her apartment at approximately 1:30 and he had gone for a walk because he was bored." Also, she had said "that she had been asleep when he returned and she did not know what time he came back."
 I
Counsel for the appellant contends that the trial court committed reversible error in overruling his motion to suppress the in-court identification of the appellant. He maintains that evidence of the victim's identification of the appellant in the "one-man show-up" on the morning of the offense should have been suppressed and that evidence concerning the victim's identification of the appellant's voice was also improperly admitted. The appellant argues that the procedures used were impermissibly suggestive and were in violation of the appellant's constitutional rights.
A one-man show-up is not inherently unfair, and it is settled law that prompt, on-the-scene confrontations are not constitutionally impermissible, but are consistent with good police work. Robinson v. State, 55 Ala. App. 658, 318 So.2d 354;Cornelius v. State, 49 Ala. App. 417, 272 So.2d 623.
Whether there has been a violation of due process in the conduct of a confrontation depends on the totality of the circumstances surrounding it. Stovall v. Deno, 388 U.S. 293,87 S.Ct. 1967, 18 L.Ed.2d 1199. Also, whether the identification testimony is admissible is to be determined by the procedure used in obtaining the identification. If that procedure is so impermissibly suggestive as to create a substantial likelihood of irreparable mis-identification, the evidence is not admissible. Robinson v. State, supra; Denson v. State, Ala.Cr.App., 348 So.2d 1139.
The confrontation in the present case occurred within two hours of the commission of the assault and afforded an opportunity for the appellant to gain his release should the victim have been unable to identify him. When the victim of the assault viewed the appellant in the parking lot, he was the only suspect present. However, there was no suggestion by the police that he was her assailant.
In addition to the description given by the victim at the time she reported the offense, the following factors present in this case have a bearing on the reliability of her identification: (1) The length of time she had been with her assailant, (2) the opportunity she had to view him when he uncovered his face, (3) the reasonably good lighting in the area, (4) her description of the clothing her assailant was wearing at the time of the assault, (5) the fact that she had noticed the opening of the door to the apartment above both before and after the assault, and (6) her identification of the appellant's voice. These factors are relevant to the totality of the circumstances to be considered in a determination of whether the victim's in-court identification was properly admitted at trial. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401. *Page 73 
We distinguish Saltys v. Adams, 465 F.2d 1023 (2nd Cir. 1972) and Thomas v. Leeke, 393 F. Supp. 282 (1975), cited by the appellant in support of his contention. In both Saltys andThomas, the petitioner was incarcerated on another charge at the time the identification was made. The identification in the present case was made not at the jail sometime later, but at the scene and within two hours of the assault.
In our judgment, the "one-man show-up" confrontation is not an unwarranted practice under the facts of this case. The confrontation occurring, as it did, near the time of the criminal act tended to insure the accuracy of the identification. Bates v. United States, 132 U.S.App.D.C. 36,405 F.2d 1104; Douglas v. State, Ala.Cr.App., 366 So.2d 373;Carter v. State, Ala.Cr.App., 340 So.2d 94; Denson v. State, supra.
Under the circumstances of this case, the victim's identification was only a confirmation of the strong evidence implicating this appellant. The confrontation was added assurance that an innocent person had not been arrested.
Therefore, under the totality of the circumstances, we conclude that there was no substantial likelihood that mis-identification resulted from the identification procedures employed here.
The voice identification of the appellant by the victim in no way infringed upon the appellant's constitutional rights. Evidence of the appellant's voice is not "testimonial or communicative in nature." Wilson v. State, 57 Ala. App. 125,326 So.2d 316. As the court stated in Wilson:
 "A person's voice is a `physical characteristic,' subject to be compelled to disclose to identifying witnesses."
Under these facts, it is our judgment that there was no error by the trial court in overruling appellant's motion to suppress the voice identification.
 II
The appellant insists that, because of the improper and prejudicial comments by the district attorney, he was denied a fair trial and that the court was in error when it overruled several motions for a mistrial. He maintains that the cumulative nature of these improper remarks created an unfair atmosphere of prejudice.
We have searched the transcript of evidence for rulings adverse to this appellant. We also have examined the one dozen or more instances of alleged misconduct by the prosecution specifically pointed out by appellant in his brief. Several motions for mistrial were made by defense counsel during the course of the trial on the grounds of misconduct by the district attorney and on the grounds that the district attorney's remarks placed a burden on the defense either to introduce items of evidence or to leave the appearance with the jury that the defense did not want those particular items introduced into evidence. We find no error in the court's actions overruling the motions for mistrial.
The granting of a mistrial is directed to the sound discretion of the trial court. Shadle v. State, 280 Ala. 379,194 So.2d 538. We have considered the individual and cumulative effect of each incident cited to us, as well as other rulings adverse to the appellant. Our examination of these incidents leads us to the conclusion that an atmosphere of bias on the part of the trial court, prejudicial to this appellant, was not shown.
Each of the rulings of the trial court, in our judgment, was proper under the laws of this State. Scott v. State,47 Ala. App. 509, 257 So.2d 369.
The defendant's objections were sustained in all except one of the occasions cited. These occurrences were not overwhelming in number. They did not evidence a "persistence" on the part of the prosecution to present illegal facts prejudicial to the defendant, nor did they indicate a general course of prejudicial appeal to the jury. In our judgment, they did not give the appearance of argument so grossly improper and highly prejudicial that it was ineradicable by proper ruling of the trial *Page 74 
court. Scott v. State, supra. The motions for mistrial were therefore properly overruled.
 III
The appellant asserts that it was error to allow the State to impeach a defense witness by contradictory statements of rebuttal witness. In particular, he complains that the State was permitted to impeach the testimony of the appellant's wife through the testimony of a deputy sheriff to the effect that she had told the officer that the appellant had gone for a walk because he was bored. The appellant insists that this statement dealt with an immaterial matter and was, therefore, not the subject of impeachment.
From the record, we find the following exchange:
By the district attorney:
 "Q. I believe you said Mike left to go for a walk about five `til one, is that right?
"A. Yes, sir.
 "Q. He told you he was taking a walk at that time because he was bored, isn't that right?
"A. No, sir.
"Q. Did he tell you anything at that time?
"A. No, sir, just said he was going out for a walk.
 "Q. Well do you remember having a conversation out there on the night this happened with Lieutenant Jacobs and Sergeant Wade when they were present there, do you remember talking with them?
"A. Yes, sir."
The rebuttal testimony by Lt. Jacobs of the sheriff's department, reads as follows:
By the district attorney:
"Q. Did you have a conversation with Miss Gant?
"A. I did.
"Q. And who was present?
 "A. Sergeant Wade, Deputy Murray, the defendant was immediately to my right inside the living room, Deputy Moore and the resident manager of the apartment complex, I do not recall his name.
 "Q. Did Miss Gant say this or this in substance to you at that time, that her boyfriend, Michael Donahoo left her apartment at approximately 1:30 and that he had gone for a walk because he was bored?
"MR. McDONALD: We object, may it please the Court.
"THE COURT: Overrule.
"MR. McDONALD: We except.
"A. Yes, she did."
From the foregoing, it is clear that the prosecution was asking the witness if the appellant had made such a statement to her and that she made a negative response repudiating her prior statement to the officer. Under these facts, the prosecution was then entitled to call Lt. Jacobs to contradict her testimony. The statement made by appellant was material as to the whereabouts of the accused at the time of the rape and his intent. Under these circumstances, we believe the inquiry was material and that the repudiation of the witness' prior statement was the proper subject of impeachment. J. McElroy,Alabama Evidence, § 156.01 (6) (3rd Ed. 1977).
We have examined this record for error and have found none. Therefore, the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.