Appellant was convicted of burglary in the first degree, which is defined by Code of Alabama 1975, § 13A-7-5 (a) as follows:
 "A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein and, if, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime;
"(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument. . . ."
The commission of the crime was established by undisputed evidence. The issue raised by defendant's plea of not guilty was narrowed by the evidence to the sole question whether defendant was the burglar, who, according to the testimony of Miss Anna Sappington, seventy-nine years of age, entered her residence about 11:00 P.M., February 3, 1980, pushed her down so forcibly as to cause her to have a large hematoma on her hip and a fractured rib, took "two ten-dollar bills and some ones" from her pocketbook, took the telephone away from her as she was attempting to use it and then ran away with the money taken from the pocketbook. The burglar had gained access to the house through a window which had been closed about 8:00 P.M.
The defendant testified that he was not at the scene at the time of the burglary. His wife also testified that he was elsewhere at the time. Both testified that he was probably within a few blocks of the house that was burglarized while the burglary was being committed.
Evidence for the State as a whole was to the effect that immediately after the burglar left the house, Mrs. Sappington called the police; she informed Officer Sammy Reeves that she "wasn't for sure" as to the identity of the burglar, but that "it was possibly — his last name was `Green.'" She said that "Green" had done some painting there a few months before and that she had seen him on occasions since.
After Officer Reeves talked with Mrs. Sappington, a call went out over the police radio system containing a description of the burglar "as a black male, approximately five foot, nine inches tall, wearing dark clothing and a toboggan." Officer Ray Plant of the Opelika Police Department was patrolling at the time and saw a black male, *Page 378 
who turned out to be the defendant, walking about two and one half blocks from Mrs. Sappington's house. Officer Plant asked defendant his name and where he was going, explaining to him that he was investigating the burglary that had just occurred at Mrs. Sappington's house. Defendant went with the officer to Mrs. Sappington's house, but no positive identification was made of him by Mrs. Sappington at the time. He was then taken to the police station, where he was interrogated and held in custody until "the next evening" when he was released. In the meantime, the clothes he had on him when first seen that night, which included a toboggan, a red windbreaker, a shirt, blue jeans and a pair of black shoes were taken from him. Also taken from his clothes or his person were a knife, "three $10.00 bills, four $1.00 bills, and four quarters;" which were sent to the Alabama Forensic Laboratory and turned over to Mr. Tellis Hudson for examination. Also turned over to Mr. Hudson for examination were some paint scrapings from the inside of the window that had been opened by the burglar and some "red fiber which was on the deadbolt lock on the back door" through which the burglar left the house. After Mr. Hudson examined the articles turned over to him and made his report, defendant was rearrested. Mr. Hudson testified that the paint that was found on the window screen "was similar in color and texture to that found on the pocket knife" taken from the pocket of defendant and that the red fiber taken from the door was of the same color, size and type as the red fiber of defendant's shirt.
The first issue expressly presented by appellant is:
 "Whether the Court improperly allowed a past felony conviction to be considered when sentencing the defendant under the Habitual Offender Act, § 13A-5-9, Code of Alabama, 1975, as amended."
The gist of appellant's brief argument as to the issue is that the use of a conviction prior to the effective date of the "Habitual Offender Act" would constitute "a violation of the Defendant's Federal and State Constitutional rights, as an example of the use of an ex post facto law."
In holding directly to the contrary Judge DeCarlo in Williamsv. State, Ala.Cr.App., 393 So.2d 492 (1981) said:
 "A similar claim was rejected by the United States Supreme Court in Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683. There the Supreme Court stated:
 "`Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive. . . . The sentence as a . . . habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'"
We now reach the same conclusion and apply it in rejection of the first contention of appellant.
During the cross-examination of Officer Moss, he was asked by defendant's counsel as to a statement made by the defendant on the night of the second arrest of the defendant, which apparently was on Friday, February 7, three days after his release from his first arrest. The testimony was as follows:
"He wanted to make a statement.
"Q. Did he give you a statement?
"A. Yes, sir, he did.
 "Q. Okay. Do you have that statement in your possession?
"A. Yes, sir, I do.
"Q. Would you mind reading it to the jury?"
Thereupon an objection was made and a ruling made as follows:
"MR. HARPER: We object. It would be self-serving.
"THE COURT: Sustained.
 "(Thereupon, the following proceedings were had in the presence but out of the hearing of the jury:) *Page 379 
 "MR. WILLIAMS: Your Honor, we object to the overruling, to the fact that we believe that the Court should be interested in what the defendant did actually tell the police.
 "THE COURT: I am interested, Mr. Williams, but I don't think the rules of evidence permit it. I don't think a self-serving declaration of a defendant, not made at the scene — afterwards, are not admissible. That's my interpretation of the law.
 "MR. WILLIAMS: Well, we object to that ruling, then, Your Honor.
"THE COURT: I understand your objection, certainly."
Both parties cite in support of their respective positions Gamble, McElroy's Alabama Evidence, § 242.02 (1977), which states:
 "Many Alabama appellate court opinions state that evidence of a party's extra-judicial declaration offered by him is inadmissible as being a `self-serving declaration.' Such statements, however, are misleading in that they seem to imply that there is some sort of special rule against the reception of `self-serving declarations.' Such an implication is erroneous because there is no rule of evidence that can be properly or accurately described as the rule against self-serving declarations. If a self-serving declaration is inadmissible as tending to prove the truth of the matter asserted, the inadmissibility results from the hearsay rule. If a self-serving declaration falls within an exception to the hearsay rule, such as a party's declaration of present pain offered as tending to show that he suffered pain or an accused's declaration of an innocent purpose of a journey made while he is setting out upon the journey, the declaration is admissible under the exception regardless of its self-serving quality.
 "The harm that comes from using the term `self-serving declaration' is that it tends to cause one to lose sight of the fact that a so-called self-serving declaration may be admissible under an exception to the hearsay rule or simply because it is relevant irrespective of the truth or falsity of the declaration."
We agree with appellant and with Judge McElroy in that it would have been better for counsel for the State to have objected on grounds that the question called for incompetent, irrelevant, and immaterial evidence and that it called for hearsay evidence that did not come within any exception to the hearsay rule of exclusion; we agree with Judge McElroy and appellee that "a party's extrajudicial declaration offered by him is inadmissible, against proper objection," unless it comes "under an exception to the hearsay rule" or unless "it is relevant irrespective of the truth or falsity of the declaration." The evidence offered did not possess either of such qualifications. In holding as we do that the ruling of the trial court does not constitute reversible error, we apply another clear and pertinent statement of Judge McElroy:
". . .
 "The trial court's sustention of either a specific or general objection will be affirmed on appeal if the evidence excluded was subject to any legal objection even though such objection was not specified.
". . ."
 Gamble, McElroy's Alabama Evidence, § 426.01 (13) (1977)
The final issue expressly presented by appellant is "whether the evidence as presented by the police and the Department of Forensic Science should have been excluded." In support of his four-page argument, appellant cites Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v.Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). He does not quote from either of the opinions cited or refer to any conduct, commissive or omissive, of the law enforcement authorities that he claims was not in harmony with any of the principles set forth in either of the cited cases other than as stated by him as follows:
 "The case at hand does not involve a written confession of the crime but at issue is the basis on which the victim *Page 380 
identified the defendant as being the burglar who committed the crime. When the defendant was taken to the victim's house, while in custody and without private warnings and after preliminary interrogations by Officer Plant, the defendant began talking and the victim used his speech as a primary basis for her identification. (T. 25, 32, 34). These statements incriminated the defendant and embedded into the mind of the victim a voice on which she based her identification."
As our brief narrative of the evidence indicates, the defendant went voluntarily with Officer Plant to the home of the victim during the earliest stage of the investigative procedure, well before he was accused, and entirely without the range of the period and circumstances of a custodial interrogation to which any of the principles of either Miranda or Escobedo applies. The record does not support any implication in appellant's argument to the effect that defendant was required by the officers to talk in the presence of the victim, but even if he were so asked or required, it would not have constituted under the circumstances a violation of any of defendant's constitutional rights.
 "The voice identification of the appellant by the victim in no way infringed upon the appellant's constitutional rights. Evidence of the appellant's voice is not `testimonial or communicative in nature.' Wilson v. State, 57 Ala. App. 125, 326 So.2d 316. As the court stated in Wilson:
 "`A person's voice is a "physical characteristic," subject to be compelled to disclose to identifying witnesses.'"
 Donahoo v. State, Ala.Cr.App., 371 So.2d 68, cert. denied, 371 So.2d 73 (Ala. 1979).
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.