486 F.2d 48
 John Plummer STANLEY, Appellee,
v.
J. D. COX, Superintendent of the Virginia State
Penitentiary, Appellant (two cases).
John Plummer STANLEY, Appellant,
v.
A. E. SLAYTON, Jr., Superintendent, Virginia State
Penitentiary, Appellee.
 Nos. 71-1365, 71-1366, 72-1584.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1973.
Decided Oct. 16, 1973.
 
 Ralph S. Spritzer, Philadelphia, Pa. [court-appointed] for John Plummer Stanley.
 Burnett Miller, III, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., and C. Tabor Cronk, Asst. Atty. Gen., on brief) for J. D. Cox and A. E. Slayton.
 Before HAYNSWORTH, Chief Judge, and RUSSELL and FIELD, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Convicted of armed robbery under three indictments charging separate robberies of the same ice cream store spread over a period of about a week, the petitioner, a Virginia prisoner, sought habeas relief, claiming that the identification testimony offered against him in his three trials was invalid constitutionally. After exhaustion of State remedies,[1] he filed separately for relief in connection with each conviction in the District Court. In two of the cases (Numbers 71-1365 and 71-1366) the District Court granted relief but in the third case (Number 72-1584) it denied relief. Both the petitioner and the State have appealed. We reverse the granting of relief in Numbers 71-1365 and 71-1366, and affirm the denial of relief in Number 72-1584.
 
 
 2
 There is little dispute over the essential facts. High's Ice Cream Company in Petersburg, Virginia, was robbed on successive occasions on December 10, December 13 and December 18, 1967. Each time, two employees were on duty in the store.[2] All employees who had been present at any one of the robberies testified at the trial involving any robbery at which they were present. All positively identified the petitioner as the robber. However, during the trial in two of the cases, store employees gave testimony about a pre-trial one-on-one identification of the petitioner made shortly after the robbery. At the time of such one-on-one identification the petitioner was a "suspect" but no actual charges had been made against him. He was at the time without counsel. In both of these cases, the District Court, relying on Gilbert v. California (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178,[3] granted relief. In the third case, there was no testimony given during trial of any pre-trial identification of the petitioner. The petitioner asserts, though, that the in-court identifications given by the store employees at this trial were tainted by pre-trial improper "show-up" identifications. On this claim, the District Court held a hearing and, after weighing the evidence, concluded that the in-court identifications in the case had an independent source and were not subject to attack. It accordingly dismissed the claim for relief in this case.
 
 
 3
 The decisions of the District Court in the three cases preceded Kirby v. Illinois (1972) 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. That case limited the proscription, both of uncounseled identifications and of testimony relating thereto, under the authority of Wade and Gilbert, to pre-trial identifications had after adversary judicial proceedings have been initiated against the defendant. All of the pre-trial identifications in question occurred before any charges were made against the petitioner and before indictment and the failure to have counsel did not therefore represent violations of petitioner's Sixth Amendment rights under Kirby. This the petitioner concedes. But he argues that, though not invalid for want of counsel, the pre-trial one-on-one identifications were still invalid as violative of his due process rights. Because of such invalidity he contends, evidence of the pre-trial identifications were inadmissible in the two cases where the witnesses testified to such identifications. Accordingly, while the District Court may have been in error in grounding the grant of habeas relief in these two cases on want of counsel, petitioner argues its decision should be sustained on due process grounds. So far as the third case was concerned, his position was that the District Court was clearly erroneous in concluding that the in-court identifications of the petitioner were based on an independent source. It is thus petitioner's contention that the two cases in which the District Court granted him relief should be affirmed and the one in which he was denied relief the District Court should be reversed. We disagree.
 
 
 4
 The real issue in all three cases turns on whether the one-on-one pretrial identifications of the petitioner were violative of due process. Although pre-trial show-up identifications have been criticized under some circumstances, as the petitioner contends, there is no per se rule that they are violative of constitutional rights.[4] There are, however, very definite due process standards, which such show-ups should meet, if they are to avoid a finding of constitutional invalidity. A show-up identification meets those due process standards, as established under the Fifth and Fourteenth Amendments if, taking into consideration the "totality of circumstances" surrounding it, it is found to be not "so unnecessarily suggestive[5] and conducive to irreparable mistaken identification" as to deny the defendant fundamental fairness.[6] One of the show-up situations consistently found to satisfy these due process standards and not be a case of "undue suggestiveness" is the confrontation had promptly after the crime.[7] Such a confrontation has been stated to have "great merit".[8] Thus, in United States v. Wilson (1970) 140 U.S.App.D.C. 220, 435 F.2d 403, 404-405, the Court said:
 
 
 5
 "Though suggestiveness is inherent in the situation, [a prompt showup identification] we think the case is not one of undue suggestiveness, in view of the countervailing considerations, that prompt, on-the-scene identifications are likely to promote fairness, by enhancing reliability of the identifications, and permit expeditious release of innocent subjects."[9]
 
 
 6
 But whether a particular showup satisfies the requirements of a reliable prompt confrontation under due process depends on the consideration of a number of factors. These have been authoritatively stated to be "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."[10]
 
 
 7
 There has been some diversity in the decisions in applying these standards thus stated by Justice Powell in Neil v. Biggers. This is particularly true in connection with the time element. Certain courts have established an extremely strict requirement of promptness in holding the show-up confrontation. In Russell v. United States, supra (408 F.2d at 1284, n. 20), the Court stated that the rule approving one-on-one identifications covered only confrontations held "within minutes of the witnessed crime." In keeping with this ruling, that Circuit found in McRae v. United States (1969) 137 U.S.App.D.C. 80, 420 F.2d 1283, evidence of a show-up identification held four hours after the crime inadmissible.[11] On the other hand, the same Court in United States v. Cunningham (1970) 141 U.S.App.D.C. 177, 436 F.2d 907, 908, held that evidence of a show-up held an hour after the crime was acceptable. Other Courts have not been so rigid in applying the time standard. In Kirby,[12] the show-up occurred the next day after the robbery; in United States v. Quarles (4th Cir. 1967) 387 F.2d 551, 555, it took place six days after the robbery; in United States Ex Rel. Carnegie v. MacDougall (2d Cir. 1970) 422 F.2d 353, cert. denied 398 U.S. 912, 90 S.Ct. 1711, 26 L.Ed.2d 74, the show-up was three months after the crime; and in United States Ex Rel. Rutherford v. Deegan (2d Cir. 1969) 406 F.2d 217, cert. denied 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771, the show-up was eleven days after the crime. In all these cases, evidence of the show-up was found admissible. Another factor, which it was suggested in argument in these cases is important, concerns the place of confrontation. The petitioner would regard whether the confrontation takes place on-the-scene or at police headquarters to be significant. The decisions, however, do not apparently regard that fact to be decisive. In Neil v. Biggers, Kirby v. Illinois, United States v. Frazier, Roper v. Beto and Johnson v. United States, the confrontations were all "station house" identifications and they were found admissible under the Stovall rule. In United States Ex Rel. Cummings v. Zelker (2d Cir. 1972) 455 F.2d 714, 715-716, cert. denied 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 and Bates v. United States (1968) 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106, the suspect was in a police car when the confrontation occurred. After all, whether on-the-scene or at police headquarters, the suspect is equally in custody and restrained. It is the fact that he is in police custody that is generally thought to provide the indicia of suggestiveness. The circumstances of the confrontation, the period of observation of the suspect, the reliability of the identification as indicated by the character of the witness' vision, are, also, to be examined, as our recent decision in Smith v. Coiner (4th Cir. 1973) 473 F.2d 877, illustrates.[13] In sum, what all these cases demonstrate is that, in weighing the several relevant factors suggested by Neil v. Biggers, Courts will recognize that "[D]ue process does not require that every pretrial identification of a witness must be conducted under laboratory conditions of an approved lineup"[14] or show-up, that every case must be resolved on its own unique facts, and that, where after a weighing of all relevant facts surrounding the identification, including the time and place of confrontation, it is concluded that the show-up was not "unnecessarily suggestive", testimony of the show-up identification is admissible. And we think this is a sound result, which will not invalidate what is, when properly used, a useful identification procedure simply because of the difficulties of applying the relevant rule as stated in Stovall to the facts of a particular case.
 
 
 8
 Measured by the above standards, the show-up identifications in the two cases where relief was granted by the District Court fully satisfied the requirements of due process and evidence relating thereto was clearly admissible. Both witnesses at the show-up had seen the petitioner on two occasions. These were not fleeting moments of a "few seconds" as in Smith; they were for extended periods during which it was claimed the petitioner robbed the store where the witnesses were in charge. Two of the robberies took place in the daytime when there was no lack of light. The other occasion on which one of the witnesses saw the robber was at night but the store was well illuminated. Both witnesses looked the robber in the face on both occasions for some time. The occasions themselves were events calculated to be impressed on the witnesses' memory. Two robberies within about a week by the same person would normally give the witness a vivid memory picture. After the robbery, both witnesses gave fairly definite descriptions of the robber. There was little doubt of the firmness of the identification in the minds of the witnesses. When the robber entered the store at the time of the third robbery, one of the witnesses exclaimed spontaneously that he [meaning the robber] was "here again". After one of the earlier robberies, one or both of the witnesses had been taken to police headquarters to view another suspect under circumstances similar to those at the confrontation with the petitioner. They refused unhesitatingly to identify that suspect who was thereupon released. This circumstance demonstrated that the mere fact that a suspect was in police custody at police headquarters was not likely to induce them to make an improper identification. They were acting on the basis of their vivid recollection, vivid recollection of an event that occurred, it would seem, within the hour. Viewing the petitioner separately and without any knowledge of whether the other had identified the petitioner, both were positive and unequivocal in their identifications. The identifications took place promptly after the robbery on the 18th, at which both witnesses had been present. The robbery occurred at 10:40 in the morning. Mrs. Weese testified that her identification was made on that same morning, which would have meant that it took place within an hour after the robbery. The other witness had appeared at the show-up and made her identification earlier-that is, within less than an hour. These identifications were well within the strict rule of promptness as followed by the District of Columbia Circuit and by other Circuits. These show-up identifications met fully the standards established and were admissible.
 
 
 9
 The petitioner, however, goes beyond the argument that the show-up testimony violated due process and argues that, even if due process be satisfied in these cases, this Court should use these cases as a vehicle for the adoption of "a rule requiring the exclusion of testimony recounting all 'show-up' identifications" [petitioners's italics]. He purports to find authority for this in Neil v. Biggers. In support of his position, he points to the language of the Court in that case, where it is stated that, if a per se rule of exclusion for "unnecessary suggestiveness" were to be adopted, a purpose would be "to deter the police from using a less reliable procedure where a more reliable one may be available * * *." (409 U.S. at 199, 93 S.Ct. at 382). Cf., Mapp v. Ohio (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. He would find in this comment a suggestion that such a per se exclusionary rule was in order in the case of one-on-one identifications because, according to his contention, a line-up is always "more reliable" than a show-up. The basic flaw in this argument is that a prompt show-up has not been found to be a "less reliable procedure", provided the "totality of circumstances" conforms to the rule promulgated in Stovall; nor did Neil v. Biggers so hold. When employed under circumstances not "unreasonably unreliable", a show-up identification has been approved consistently, has been declared to have "great merit",[15] "insure[s] accuracy",[16] and "promote[s] fairness" and enhances "reliability of the identifications".[17] In fact, Russell v. United States, supra, dealt with this very point on the reliability of a show-up vis-a-vis other procedures. It stated: "* * * Stovall v. Denno did not erect a due process barrier against all unreliable identifications; it requires exclusion only of evidence which could and should have been obtained by procedures less conducive to unreliability." (408 F.2d at 1285). And it proceeded to find, as we have found in these cases, that the show-up identification evidence was not subject to exclusion because it was obtained by a "less reliable" procedure, i.e., a show-up.[18] Another reason suggested by the petitioner to justify the promulgation of his proposed rule is that "lower courts have experienced some difficulty in ascertaining the proper method of applying Stovall's 'totality' test." It is by no means certain that in applying Stovall the "lower courts have experienced" any greater difficulty than in applying many other due process rules. Nor does it seem that a rule that "promote[s] fairness" and enhances "reliability of the identifications" should be proscribed simply because it forces the Courts to review and weigh the evidence. Finally, we do not read, as does the petitioner, the opinion in Neil as intimating or suggesting the adoption of a novel rule of such rigidity as that advocated by the petitioner. Even the editor of the Note in 73 Col.L.Rev. 1168, 1181, who was favorable to the argument of the petitioner, concluded his comment on Neil with the observation that the opinion in that case may perhaps have indicated "an attitude hostile to the exclusion of out-of-court identifications in any but the grossest of circumstances; the intention may have been to undercut Stovall. If this is so, it is likely that the Biggers rule, mandating the use of external factors in determining whether an out-of-court identification violates due process, will be extended to post-Stovall cases." We do not find in Neil any of the intimations of intention that the editor noted any more than we found in it a suggestion justifying the promulgation of the rule the petitioner proposed; on the contrary, we found in Neil a faithful adherence to and a firm reaffirmance of Stovall and its "totality" rule.
 
 
 10
 What petitioner is really arguing for is a rule that would prescribe a line-up as the only permissible identification procedure available to the police in ferreting out crime. He contends a line-up is always more reliable than a show-up. While it may be conceded that a line-up is admittedly more reliable than a show-up in most cases, it is not necessarily so in a prompt, quick show-up held under proper circumstances. And this is the basis of the innumerable cases in which prompt confrontations have been found acceptable. It is thus manifest that the fundamental theory on which this phase of petitioner's argument rests is unsupportable.
 
 
 11
 Finally, the petitioner argues that in Smith v. Coiner, supra (473 F.2d 877), we actually adopted the per se exclusionary rule urged by him. This argument misconceives the reasoning on which Smith rests. The test of "totality of circumstances", as that term has been used in the cases, was there applied. The show-up was not invalidated merely because a line-up in that case would have been more reliable. It recognized that a show-up confrontation which "was part of an on-the-scene immediate investigation" was generally recognized as reliable and was not objectionable. But, after a careful sifting of the facts in that case, it concluded with the finding that, "[W]e think the requisite degree of reliability is absent here." The rationale for this conclusion was painstakingly stated in the opinion. The confrontation took place five hours after the crime. The prosecutrix "saw her assailant for only 'two seconds' by the light of a flashlight." She had "impaired vision" and "was not wearing her glasses at the time." She gave at best only a hazy description of her assailant prior to the show-up; in fact, about the only description she gave was that he was "white". It is accordingly manifest that the Court was applying faithfully the "totality of circumstances" test established by Stovall and the result reached was that, "[W]hen we apply the totality of circumstances test here, we conclude that Smith was denied due process of law."
 
 
 12
 There remains for decision the claim that the in-court identifications in all three cases were tainted by prior improper show-up identifications. From what has already been said, the claim of improper show-ups cannot be sustained and there was thus no taint to the incourt identifications. Moreover, the District Court concluded-correctly in our opinion-that even had there been taint, there was an independent source for the in-court identifications.
 
 
 13
 In short, we find no basis either on due process grounds or on policy considerations for finding the show-up identifications in these cases "unnecessarily suggestive." Accordingly, the admission of testimony relating to such identifications was not error.
 
 
 14
 It follows that the judgments of the District Court in Nos. 71-1365 and 71-1366 granting habeas relief are reversed, with directions to dismiss the petitions, and the judgment in No. 72-1584, denying habeas relief is affirmed.
 
 
 
 [1]
 The State alleges that petitioner has not exhausted his State remedies in these cases. Because of the result reached we have accepted the contention of the petitioner on this point
 
 
 [2]
 December 10-Mrs. Virginia Beamer
 Mrs. Mary Weese
 December 13-Mrs. Elizabeth Keeton
 Mrs. Lucille Phillips
 December 18-Mrs. Mary Weese
 Mrs. Lucille Phillips
 
 
 [3]
 In United States v. Wade (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, the Supreme Court held that an in-court identification of a defendant by a witness to a crime must be excluded from evidence if such witness had previously identified the defendant while defendant was in police custody and without counsel, unless it could be shown that such in-court identification had an independent origin or constituted harmless error. Wade was amplified in Gilbert v. California (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, which held that trial testimony by witnesses recounting pre-trial identifications of the defendant made while defendant was without counsel must be excluded from evidence, whether or not such testimony had an independent source. Both decisions were based upon the Sixth Amendment guarantee of a right to counsel at any critical stage of a prosecution
 
 
 [4]
 Neil v. Biggers (1972) 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401:
 "But as Stovall makes clear, the admission of evidence of a showup without more does not violate due process."
 
 
 [5]
 The term is "unnecessarily suggestive" in Stovall v. Denno (1967) 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and "impermissibly suggestive" in Simmons v. United States (1968) 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247. Both are used in Neil v. Biggers, supra, at 197 and 198, quoting Simmons and Stovall. It would seem that the two phrasings represent different articulations of the same requirement and should be so applied. See United States Ex Rel. Phipps v. Follette (2d Cir. 1970) 428 F.2d 912, 914-915, cert. denied 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146; Note, Identification: Unnecessary Suggestiveness May Not Violate Due Process, 73 Col.L.Rev. 1168, 1171, n. 29
 
 
 [6]
 Stovall v. Denno, supra, at 302. The "two-pronged test", outlined later in Phipps, supra, and established by Stovall was summarized in the phrase "unnecessarily unreliable" by Judge Leventhal in his concurring opinion in Clemons v. United States (1968) 133 U.S.App.D.C. 27, 408 F.2d 1230, 1250, n. 1, cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567
 
 
 [7]
 The rule is well stated in the recent case of Mock v. Ross (6th Cir. 1972) 472 F.2d 619, 621, cert. denied 411 U.S. 971, 93 S.Ct. 2165:
 "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."
 This is a restatement of the rule as expressed by then Judge Burger in the oft-cited case of Bates v. United States (1968) 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106.
 
 
 [8]
 United States v. Washington (1970) 144 U.S.App.D.C. 338, 447 F.2d 308, 312
 
 
 [9]
 See, also, Russell v. United States (1969) 133 U.S.App.D.C. 77, 408 F.2d 1280, 1284, cert. denied 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245:
 "Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject."
 See, also, Wise v. United States (1967) 127 U.S.App.D.C. 279, 383 F.2d 206, 209, cert. denied 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164.
 The rationale of this rule was stated in Note, Pre-trial Identification Procedures-Wade to Gilbert to Stovall: Lower Courts Bobble the Ball, 55 Minn.L.Rev. 779, 788 (1971); Note, Identification: Unnecessary Suggestiveness May Not Violate Due Process, 73 Col.L.Rev. 1168, 1171, n. 30; Sobel, Assailing the Impermissible Suggestion: Evolving Limitations on the Abuse of PreTrial Identification Methods, 38 Brooklyn L.Rev. 261, 294 (1971).
 For illustrative cases in which show-up identification testimony has been received, see: United States v. Frazier (4th Cir. 1969) 417 F.2d 1138, 1139, cert. denied 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427, reh. denied 398 U.S. 945, 90 S.Ct. 1850, 26 L.Ed.2d 284; United States v. Quarles (4th Cir. 1967) 387 F.2d 551, 556, cert. denied 391 U.S. 922, 88 S.Ct. 1815, 20 L.Ed.2d 659; Royce v. Moore (1st Cir. 1972) 469 F.2d 808, 812, n. 5; United States Ex Rel. Gomes v. State of New Jersey (3d Cir. 1972) 464 F.2d 686, 688; Mock v. Ross supra (472 F.2d at 621; Roper v. Beto (5th Cir. 1971) 454 F.2d 499, 502-503; Stidham v. Wingo (6th Cir. 1971) 452 F.2d 837, 841; Hemphill v. United States (1968) 131 U.S.App.D.C. 46, 402 F.2d 187, 192; Johnson v. United States (8th Cir. 1966) 362 F.2d 43, 47.
 
 
 [10]
 Neil v. Biggers, supra, at 199 (409 U.S.), 93 S.Ct. at 382
 
 
 [11]
 In this case, the Court said (420 F.2d at p. 1290):
 "* * * At some point the nexus of time and place between offense and identification must become too attenuated to outweigh the admitted dangers of presenting suspects singly to witnesses. We conclude that this point was reached, and more, in this case."
 
 
 [12]
 In Kirby, the issue, as stated by the Court, was:
 "* * * In the present case we are asked to extend the Wade-Gilbert per se exclusionary rule to identification testimony based upon a police station showup that took place before the defendant had been indicted or otherwise formally charged with any criminal offense" (406 U.S. at p. 684, 92 S.Ct. at p. 1879).
 
 
 [13]
 See, also, Note, No Panacea: Constitutional Supension of Eyewitness Identification, 62 J. of Crim.L. & Police Science, 363 (1971):
 "The extent of which the showup may endanger the reliability of an identification depends upon the circumstances of the confrontation and upon the opportunity the witness had to observe the offender."
 
 
 [14]
 United States v. Davis (4th Cir. 1969) 407 F.2d 846, 847
 
 
 [15]
 United States v. Washington, supra (447 F.2d at 312)
 
 
 [16]
 Bates v. United States, supra (405 F.2d at 1106)
 
 
 [17]
 United States v. Wilson, supra (435 F.2d at 404-5)
 
 
 [18]
 See, also, Jackson v. United States (1969) 134 U.S.App.D.C. 18, 412 F.2d 149, 153:
 "We are loath to encourage, or tolerate, individual confrontations such as occurred here. 'The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.' Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). But such situations must be judged by the 'totality of the circumstances surrounding it * * *."'
 After considering the circumstances of the show-up identification in that case, the Court concluded that the show-up was acceptable.