**Michael Harvey GHIZ, Appellee,**

v.

**Donald E. BORDENKIRCHER, Warden, Appellant.**

No. 74–2177.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1975.

Decided July 17, 1975.

E. Leslie Hoffman, III, Asst. Atty. Gen. of W. Va. (Chauncey H. Browning, Jr., Atty. Gen. and Richard E. Hardison, Deputy Atty. Gen. on brief), for appellant.

M. Blane Michael, Petersburg, W. Va. [Court-appointed counsel], for appellee.

Before BRYAN, Senior Circuit Judge, FIELD and WIDENER, Circuit Judges.

BRYAN, Senior Circuit Judge:

Identification of Michael Harvey Ghiz, during his West Virginia court trial, as the armed robber of one Clinton Dailey was made, Ghiz maintains, in abrogation of his Fourteenth Amendment due process guarantee, and so he argues that his conviction and imprisonment cannot stand. After pressing his claim without success through the available State rem-

edies, he prayed Federal habeas corpus release from the custody of the penitentiary warden. 28 U.S.C. § 2241 *et seq.* The District Court took petitioner's view, granted the writ and remanded Ghiz for a new trial by the State, should it be so advised. In the name of the warden, West Virginia appeals.

Ghiz's contention, accepted by the District Court, was that the State court allowed the robbery victim to point him out at trial as his assailant and so denied Ghiz due process protection, because such identification rested on impermissibly suggestive pretrial procedures.[1] The District Judge engaged in close and tedious inquisition of each ingredient of proof having possible incidence upon the naming of Ghiz as the assailant. In this pursuit every circumstance indicating unfair prompting was appraised by the Court and, on review of them, suggestiveness was found to account for the identification of Ghiz. No infirmity is perceived in these fact findings; indeed their accuracy is not questioned by the State.

Our disagreement with the District Court is its *conclusion of law* that the findings were absolute and uncompromising in establishing the invalidity of the trial identification because it stemmed from the investigators' coaching or hinting to Dailey of Ghiz's guilt.

Clear exposition of the issue and its resolution requires recitation of the facts *in extenso* although they are free of conflict. For exactness we write them as the District Judge wrote, but with unhurtful omissions and paragraphing:

"On the evening of Thursday, May 27, 1971, Mr. Clinton Dailey was working as a clerk in the pharmacy unit of the Charleston Memorial Hospital in Charleston, West Virginia. At approximately 7:50 p. m., a gunman entered the pharmacy, handcuffed and gagged Mr. Dailey, forced him to ingest three sleeping capsules, and proceeded to fill a large bag with various narcotic drugs. The robber wore no

---

1. The constitutional right to counsel was not a question in the case.

mask of any kind and at times he was located very near the victim in a face to face confrontation. . . .

"Mr. Dailey gave one of the officers a description of the robber as having been about five feet nine inches tall, of 'scrawny' build, weighing about one hundred forty pounds, with a ruddy complexion and dark brown hair. Mr. Dailey [at] the Charleston Police Department was allowed to view an extensive collection of 'mug shots.' The following day, several photographs were taken to the witness' place of employment for his examination. None of these viewings resulted in an identification of Dailey. . . [F]ive days after the robbery, officers in charge of the investigation obtained two home color photographs of Petitioner taken six years before the alleged robbery. These two photographs were taken to the hospital where Dailey worked and shown to him. These were the only two photographs shown the witness at that time and apparently this was the only occasion on which pictures of only one individual were exhibited to him. Upon handing Dailey the pictures, one of the officers remarked that they 'had some pictures of a fellow [they] thought was responsible for [the] crime.' Dailey examined the pictures and responded that they were bad pictures but that they 'looked like' the man.

"The investigating officers then obtained a warrant for Petitioner's arrest. . . . [S]even days after the robbery, [petitioner voluntarily] went to the Charleston Police Department. Petitioner was seated in a small room located off the main squad room and told to wait. No effort was made to place Petitioner under arrest or to inform him of the outstanding warrant.

"Dailey was asked to come to the station. The investigating officers met Dailey in the police station parking lot and rode with him on an elevator to the squad room. During the ride, one of the officers told Dailey 'that the fellow we think was probably responsible for the crime at the Charleston Memorial Hospital was in the office.' The investigating officers then escorted Petitioner through the squad room, past Dailey, and into another adjoining room. As Petitioner passed, Dailey nodded his head, apparently signifying that he believed Petitioner to be the culprit. Petitioner was placed under arrest after entering another adjoining room. . . .

"Dailey also testified at the trial that he had seen his assailant on a few other occasions in the halls of the hospital and that his identification of Petitioner was in part based upon those sightings. This testimony is made suspect, however, by Dailey's statement that Petitioner's appearance on those prior occasions was substantially the same as at the time of the robbery and the trial." (Later testimony revealed that Petitioner had extremely long hair for several months before the robbery and that he had gotten a relatively short haircut on the day of the robbery in preparation for enlistment in the military service. Dailey failed to note any difference in appearance between the man he saw in the halls of the hospital and the man who robbed him.)

The pretrial procedures which Ghiz insists fatally infected his identification were Dailey's incriminating nod at the station house and his recognition of Ghiz in the two "home color" photographs mentioned in the factual narrative, both occasions preceded by police remarks that they thought this was his robber. As a witness at the trial a policeman testified to the photo incident and, as noted, Dailey at the same time gave evidence condemning Ghiz, putting his finger on him in court.

■ The test of an identification when sifted for constitutional due process is whether in "the totality of the circumstance" the pretrial episodes were "so unnecessarily suggestive and conducive to irreparable mistaken identification

that he was denied due process of law." *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972)[2]; *Stanley v. Cox,* 486 F.2d 48, 50 (4 Cir. 1973). *Neil* tellingly posits the identical issue of identification, and unfolds the measurement to be applied in resolving it:

> "We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. . . . " *Neil v. Biggers, supra,* 409 U.S. at 199, 93 S.Ct. at 382.

■ Obedient to this rubric, our duty now is to assay the totality of all relevant considerations. In this concentration, paramount are the stark facts of Dailey's distinguishment of his assailant and unobscured view of his criminal conduct, all in the very face of Dailey. This area of the hospital pharmacy was lighted. The criminal's face was uncovered, in no manner deceptive through disguise. In this brutality Ghiz was but a matter of inches away. Handcuffs and a gag were imposed on Dailey; he was forced to ingest sleeping capsules; at the same time the robber filled a large bag with narcotics. These acts consumed some 10 or 15 minutes. Strengthening this identification is Dailey's testimony that he had known Ghiz previously, having seen him in the hospital corridors. Admittedly, however, countering this evidence, was testimony that his appearance was different on the day of the crime because his formerly long hair had been cut and was then worn short, preparatory to enlistment in the Army.

With this sweeping proof included in "the totality of the circumstances," it seems to us that the identification was hardly unreliable. In this summation we do not overlook the pretrial procedures termed suggestive in the District Court, but we need not ponder this objection, for assuming *arguendo* the correctness of these characterizations, their effect was not so solid as to blunt the impact of the victim's first-hand scenario of the crime. Nor would such suggestiveness require the exclusion of all identifying evidence. *Neil v. Biggers, supra,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Montanye,* 486 F.2d 263, 267 (2 Cir. 1973). Notably, his identification did not rest upon the protested before-trial events. It had an independent source—his own witness—obviously not tinged by the accused procedures and subjected to severe cross-examination. *Stanley v. Cox, supra,* 486 F.2d 48, 55 (4 Cir. 1973); *Souza v. Howard,* 488 F.2d 462, 465 (1 Cir. 1973); *United States v. Yanishefsky,* 500 F.2d 1327, 1331 (2 Cir. 1974); *Baker v. Hocker,* 496 F.2d 615, 617 (9 Cir. 1974).

Ghiz, therefore, was not denied due process at trial. The contrary decision of the District Court cannot be accepted.

Judgment vacated.

---

2. The opinion embodies the history of this holding, including *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), so we do not undertake to reiterate them.