**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 96-4303

TARQUI DARNELL MATTOX,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-94-129-MU)

Argued: September 22, 1998

Decided: November 23, 1998

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and
MAGILL, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Patrick McLoughlin, Jr., MOORE &
VAN ALLEN, P.L.L.C., Charlotte, North Carolina, for Appellant.
Kenneth Davis Bell, First Assistant United States Attorney, Charlotte,
North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United
States Attorney, Brian L. Whisler, Assistant United States Attorney,
Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After he stole a car at gunpoint in a convenience store parking lot, Tarqui Darnell Mattox was convicted of carjacking and of using a firearm during a crime of violence. He appeals his conviction, charging that his victim identified him at a suggestive out-of-court show-up, that the show-up tainted his victim's later in-court identification, and that his victim selected Mattox' handgun out of an improper photographic array. Mattox also contends that the carjacking statute exceeds Congress' commerce power and that his simultaneous convictions under the carjacking and firearms statutes violate the Double Jeopardy Clause. Finally, Mattox contests the assessment of one criminal history point in the calculation of his sentence. Finding his arguments without merit, we affirm the judgment of the district court.

I.

At around 10:00 p.m. on Friday, August 19, 1994, a pizza delivery-man named Mohamad Rabih Dana stopped to use the pay phone outside a convenience store in Charlotte, North Carolina. After a brief exchange with a young man standing at the telephones, Dana began to place his call. The young man then placed a small-caliber pistol to Dana's face and demanded his car keys and money. Dana handed over the keys and about seventy dollars, and his assailant left the parking lot behind the wheel of Dana's Nissan Sentra. Dana immediately notified the Charlotte-Mecklenburg police who, along with FBI Special Agent Erik Blowers, came to the scene and interviewed him about the crime.

Around two hours later a police officer spied the stolen Nissan driving along Interstate 85. The vehicle left the highway and led the officer on a high-speed chase through a residential area. The Nissan's driver, Tarqui Darnell Mattox, then stopped the car and fled on foot.

2

Within about five minutes the police apprehended Mattox, handcuffed him, returned him to the vehicles, and placed him in the back seat of a police cruiser.

A police officer picked up Dana at around midnight and drove him to the scene of the arrest. The police removed the handcuffed Mattox from the back seat of the cruiser, illuminated him with a spotlight, and asked Dana if he could identify him. Dana instantly identified Mattox as his parking-lot assailant.

Upon his arrest Mattox told Agent Blowers that he lived with his uncle. That same night Blowers visited the uncle, who informed the agent that he kept a pistol in the house and that Mattox had access to the gun. Blowers seized the weapon. Three days later he prepared for Dana a photographic array of four handguns. Within seconds Dana identified Mattox' gun as the weapon used in the carjacking.

A federal grand jury indicted Mattox for carjacking, 18 U.S.C. § 2119, and for using a firearm during a crime of violence, 18 U.S.C. § 924(c). A magistrate judge denied Mattox' pretrial motions to suppress the on-scene identification and the photographic array and to dismiss the indictment on the grounds that the carjacking statute violated the Commerce Clause and that the two charges violated the Double Jeopardy Clause.

At trial the prosecutor presented evidence of the on-scene show-up and of the photo array. Dana also identified Mattox in court. A jury convicted Mattox on both counts.

On appeal Mattox claims that the district court should have granted his suppression motions, that Dana's in-court identification was improper, and that the court erred in denying his motions to dismiss the indictment. He also challenges his sentence on the ground that the district court improperly considered a prior conviction for what he characterizes as minor misconduct. We affirm the judgment of the district court on each issue, and therefore affirm Mattox' conviction and sentence.

II.

Mattox argues that his conviction resulted from three unconstitutionally suggestive identifications. First, he contends that the on-scene

3

show-up was impermissibly suggestive. Second, he claims that the show-up tainted Dana's in-court identification. Third, he maintains that the photographic array was improperly suggestive.

A.

An out-of-court show-up violates the Constitution only if the procedure is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302 (1967); see also Stanley v. Cox, 486 F.2d 48, 50 (4th Cir. 1973). "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Although one-on-one show-ups may in some circumstances be suggestive, both the Supreme Court and this circuit have rejected the notion that show-ups are so unreliable that they require a per se rule of exclusion. See Neil v. Biggers, 409 U.S. 188, 198-99 (1972); Stanley, 486 F.2d at 53-55. On the contrary, this court has observed that a show-up occurring "promptly after the crime" can be more reliable than alternative methods of identification. Stanley, 486 F.2d at 50-51 & n.7. The analysis in each case looks to the totality of the circumstances, with particular attention to "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200; see also Brathwaite, 432 U.S. at 114; Stanley, 486 F.2d at 51.

After examining those factors, we find that Dana's identification of Mattox on the night of the crime was reliable. First, Dana had an adequate opportunity to view his assailant. The carjacking occurred directly under a street light in a well-lit convenience store parking lot. Dana observed the defendant standing at the telephones and spoke with him briefly before the crime. He concentrated fully on his assailant's face while standing at gunpoint for almost a minute, and watched the carjacker as he turned and fled in the Nissan. Second, Dana "was no casual observer, but rather the victim" of a serious crime. Biggers, 409 U.S. at 200. He testified that he studied his attacker during the carjacking. He also testified that he was not frightened during that period, but was able to concentrate on the assailant.

4

The magistrate judge expressly found this testimony to be credible. Third, the description Dana provided police immediately after the crime was reasonably accurate. He described his attacker as a black male, approximately 5'-8" tall, of heavy build, age 16-18, dressed in blue or green pants and a white t-shirt, possibly the "Gant" brand, with a block of colors or writing on it. Mattox is a black male, 5'-8" tall, 180 pounds, twenty years old, with a mustache and beard. Upon his arrest he was dressed in tan shorts and a white t-shirt with a "Tommy Hilfiger" logo on it in red and blue colors. Mattox makes much of the differences between his appearance and Dana's description, but on the whole Dana's description was not inaccurate. Fourth, Dana was completely certain at the show-up that Mattox was the parking-lot assailant. Within seconds Dana identified him in unequivocal terms. Finally, this confrontation occurred only two and one-half hours after the carjacking -- a time frame that renders Dana's identification particularly reliable.

The circumstances make clear that the show-up identification was constitutionally reliable. To the extent that there were inconsistencies between Dana's post-crime description and Mattox' actual appearance, "such evidence is for the jury to weigh." Brathwaite, 432 U.S. at 116; see also United States v. Hughes, 716 F.2d 234, 241 (4th Cir. 1983). We find that the evidence of the show-up was properly admitted.

B.

An out-of-court show-up only taints an in-court identification if the show-up itself is unconstitutionally suggestive. See United States v. Johnson, 114 F.3d 435, 441 (4th Cir.), cert. denied, 118 S. Ct. 257 (1997); United States v. Wilkerson, 84 F.3d 692, 695 (4th Cir. 1996), cert. denied, 118 S. Ct. 341 (1997). Because the on-scene show-up was reliable in this case, Dana's in-court identification was also permissible.

Even if the out-of-court show-up had been impermissibly suggestive, Dana's in-court identification was proper. An in-court identification is admissible even after an improper out-of-court procedure if the in-court identification is itself reliable. See Wilkerson, 84 F.3d at 695. Reliability is once again a function of the totality of the circum-

5

stances, including not only the five Biggers factors but also the "corrupting effect of the suggestive identification itself . . . [and] other evidence of the defendant's guilt." Id. (internal quotation marks omitted).

As noted above, Dana had ample opportunity to view his assailant during the crime, and did so with great attention. His description of the perpetrator immediately after the attack was reasonably accurate. Moreover, Dana made his courtroom identification with complete certainty. There is no evidence that the show-up "corrupted" Dana's identification at trial -- his description of his attacker did not improve after the show-up. Finally, other evidence from trial suggests that Mattox was the assailant. He was arrested while driving the stolen Nissan, he fled from the police, and Dana's pager was recovered along Mattox' path of flight. All of these factors support a finding that the in-court identification was reliable. We therefore hold that its admission was not error.

C.

Evidence of an out-of-court photographic array is assessed in much the same way as other out-of-court identifications-- whether, in light of the totality of the circumstances, the evidence is reliable. See Brathwaite, 432 U.S. at 114; Biggers, 409 U.S. at 198; Simmons v. United States, 390 U.S. 377, 383-84 (1968). Mattox suggests that the photographic array was unnecessarily suggestive because it included only four weapons and because only one of the four -- his handgun -- had a white handle.

Although the array may have been less than ideal, the circumstances demonstrate that it was not unnecessarily suggestive. Dana had an opportunity to observe the gun while his assailant held it one foot in front his face during the crime. His description of the weapon, although brief, was accurate. Dana told Agent Blowers that it was a small handgun, possibly .22 caliber, dark in color. Notably, he did not mention at that time that the gun had a white handle -- he told Blowers after the photo array that he could not see the handle because it was covered by his assailant's hand. Moreover, Dana was completely certain of his identification -- he picked the weapon out of the photograph in seconds based on its aged look and the length of its barrel.

6

The photo array occurred only three days after the crime. Furthermore, Blowers made efforts to ensure the array was no more suggestive than necessary. He searched through over two hundred handguns in the police department's inventory to find similar weapons, and selected the four handguns that were most comparable to Mattox'. Given the sum of these circumstances, we hold that the photo array was not constitutionally infirm.

III.

Mattox' next two arguments are foreclosed by circuit precedent. First, citing United States v. Lopez, 514 U.S. 549 (1995), Mattox argues that Congress' commerce power does not support the carjacking statute. That argument, however, is directly barred by United States v. Cobb, 144 F.3d 319 (4th Cir. 1998) (holding that both section 2119's jurisdictional element and its regulation of an instrumentality of interstate commerce distinguish it from the statute rejected in Lopez).

Second, Mattox contends that his consecutive sentences under section 2119 and section 924(c) violate the Double Jeopardy Clause. Here again, this court has squarely held to the contrary. See United States v. Johnson, 32 F.3d 82 (4th Cir. 1994); see also United States v. Terry, 86 F.3d 353, 357 (4th Cir. 1996), cert. denied, 118 S. Ct. 2348 (1998) ("[T]he text of § 924(c) plainly authorizes consecutive punishment.").

IV.

Finally, Mattox challenges the assessment in his sentencing calculation of one criminal history point for his conviction on four related offenses arising out of a 1993 high-speed chase in Atlanta: reckless driving, fleeing or attempting to elude police, obstructing an officer, and damage to property and speeding. Mattox argues that the district court should have excluded these convictions under the Sentencing Guidelines, which except certain offenses from the prior history calculation unless "the sentence was a term of probation of at least one year," U.S.S.G. § 4A1.2(c)(1)(A), or unless "the prior offense was similar to an instant offense," id. § 4A1.2(c)(1)(B). His contention is without merit. Because the penalties for Mattox' offenses included a

7

sentence of twelve months' probation, section 4A1.2(c)(1)(A) prevents their exclusion. Although Mattox argues that this was a "minor traffic infraction" of the type that is "never counted" in criminal history calculations, id. § 4A1.2(c)(2), the charge itself -- "damage to property and speeding" arising out of a high-speed chase -- makes clear that the offense was more than minor. The district court did not err in assessing a criminal history point for these offenses.

V.

Because we find that the show-up identification, the in-court identification, and the photographic array were constitutionally reliable, and because Mattox' Commerce Clause and Double Jeopardy Clause arguments are foreclosed by circuit precedent, we affirm Mattox' conviction on the carjacking and firearms counts. Furthermore, we affirm the district court's assessment of one criminal history point for the convictions arising out of Mattox' prior high speed chase.

AFFIRMED

8