**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4366**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

DWAYNE MCFADDEN,

                                        Defendant - Appellant.

---

Appeal from the United States District Court for the District of
South Carolina, at Florence.  Terry L. Wooten, District Judge.
(CR-04-564)

---

Submitted:  June 12, 2006          Decided:  June 28, 2006

---

Before KING and SHEDD,[*] Circuit Judges, and HAMILTON, Senior
Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

J. Falkner Wilkes, CRAVEN & WILKES, Greenville, South Carolina, for
Appellant.  Jonathan S. Gasser, United States Attorney, Rose Mary
Parham, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Florence, South Carolina, for Appellee.

---

        [*]Judge Shedd was a member of the original panel but did not
participate in this decision.  This opinion is filed by a quorum of
the panel pursuant to 28 U.S.C. § 46(d).

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Dwayne McFadden appeals from his September 2004 conviction in the District of South Carolina on one charge of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). Following a jury trial, McFadden was convicted on the sole count of his indictment. On March 16, 2005, he was sentenced to 280 months of imprisonment. In this appeal, McFadden contends that the district court erred in admitting into evidence (1) the testimony of two eye-witnesses who identified McFadden at the scene of his arrest; and (2) testimony regarding statements McFadden made to a jailhouse informant. The district court denied McFadden's requests to suppress the evidence concerning the identifications and his statements. As explained below, we rejected his contentions of error and affirm.

I.

The events underlying McFadden's conviction, as revealed at trial, are as follows: On the night of March 28, 2004, Danny Johnson walked to a convenience store in Myrtle Beach, South Carolina, accompanied by man he later identified as McFadden. As they walked, Johnson noticed that McFadden had a silver handgun and a blanket with a cartoon figure. Shortly thereafter, Johnson heard a gunshot and flagged down a police officer, to whom he related having heard the gunshot and his observations of McFadden. That

3

same night, Patrick Hodge was working as a security guard at a nearby nightclub. During his shift, Hodge refused to admit a man to the club because he had no identification. Hodge noticed that the man, later identified as McFadden, was carrying a silver handgun with a brown handle and a Scooby Doo towel or blanket. Hodge immediately reported those events to the police.

Subsequently, a police officer spotted McFadden, who was carrying a Scooby Doo blanket, in the same area of Myrtle Beach, and attempted to stop him. McFadden fled, however, and a short chase ensued before he was detained by the officer. During a later search of the area, police recovered a .32 caliber revolver, silver with a brown handle, along the route McFadden had taken after he was turned away from the nightclub. After the police handcuffed McFadden and placed him in the back of a cruiser, they brought Johnson to the cruiser and he identified McFadden as the man he had seen with the handgun fifteen minutes earlier. The officers also brought Hodge to the cruiser, where he identified McFadden as the man he had refused to admit to the nightclub a few minutes earlier. Hodge identified the silver handgun with a brown handle as the firearm he saw McFadden carrying.

McFadden was indicted in August 2004, on a single count of being a felon in possession of a firearm, and he was tried in September 2004. Before trial, McFadden moved to suppress the testimony of Johnson and Hodge about their March 28, 2004 pre-trial

4

identifications, contending that the circumstances surrounding them were unduly suggestive and contravened his due process rights. After conducting a non-jury evidentiary hearing on the issues, the court determined that the identifications had been constitutionally conducted, and thus permitted Johnson and Hodge to testify before the jury.

At trial, the prosecution presented the testimony of Dr. David Michael Woodward, a convicted felon who testified that McFadden had confessed to him in the Florence County (South Carolina) Detention Center, after McFadden had been indicted and just prior to his trial. According to Woodward, McFadden admitted that he had fled from the police on September 28, 2004, because he was a felon in possession of a firearm, which he knew to be illegal. Woodward, a former medical doctor with a law degree, acknowledged at trial that he had previously been sentenced to fifteen years in prison for running an illegal "pill-mill" operation that distributed controlled substances in South Carolina, but he denied that he had been directed by prosecutors to secure McFadden's inculpatory statements. See United States v. Alerre, 430 F.3d 681, 684-85 (4th Cir. 2005). Woodward also admitted that he had previously testified for the prosecution against his own co-defendants and against four or five other defendants he had met in jail. His earlier testimony, which included various incriminating jailhouse

5

statements made to him, had been provided in an effort by Woodward to secure a reduction of his own sentence.

Prior to trial, McFadden had moved to exclude Woodward's testimony from the prosecution's case, contending that he was a Government agent who had deliberately elicited McFadden's jailhouse statements in September 2004, after McFadden had been indicted in August 2004, in violation of McFadden's Sixth Amendment right to counsel. The Government maintained, however, that it had not directed Woodward to obtain any information from McFadden and that it had nothing to do with Woodward's placement in jail with McFadden. In declining to suppress Woodward's testimony, the court found no evidence that the Government had directed Woodward to elicit McFadden's jailhouse statements, and it determined there had been no violation of his right to counsel.

McFadden was convicted on September 28, 2004, of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). As noted, he was then sentenced to 280 months imprisonment. McFadden has timely noted an appeal from his conviction, and we possess jurisdiction under 28 U.S.C. § 1291.

II.

In assessing an appeal concerning the denial of a suppression motion, we review the district court's factual findings for clear

6

error and its legal conclusions de novo. United States v. Johnson, 114 F.3d 435, 439 (4th Cir. 1997).

## III.

### A.

In his first contention on appeal, McFadden maintains that the eye-witness identifications made of him at the scene of his arrest were so unduly suggestive as to contravene his due process rights, and that the trial court therefore erred in denying his motion to exclude the identifications from his trial. The admission of a pre-trial identification before a jury may contravene due process if, in the totality of the circumstances, the identification procedure is so unduly suggestive and conducive to mistake as to render the identification unreliable. United States v. Johnson, 114 F.3d 435, 441 (4th Cir. 1997). The Supreme Court has established a two-step analysis for assessing whether testimony regarding a pre-trial identification should be admitted into evidence. United States v. Wilkerson, 84 F.3d 692, 695 (4th Cir. 1996) (citing Manson v. Brathwaite, 432 U.S. 98 (1977); Neil v. Biggers, 409 U.S. 188 (1972)). First, the court must assess whether the challenged pre-trial identification was unduly suggestive. Id. If the procedure was unduly suggestive, however, the identification evidence may nonetheless be deemed admissible if it was reliable. Id. The pertinent factors in assessing

reliability include: (1) the witness's opportunity to view the perpetrator at the time of the offense; (2) the witness's degree of attention at the time of the offense; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the offense and the confrontation. Id.

After weighing the pertinent factors, the district court concluded that the challenged pre-trial identifications were sufficiently reliable to be admitted into evidence before the jury. Johnson and Hodge each had an ample opportunity to view McFadden in possession of the handgun in well-lit areas during their respective interactions with him. Each witness identified McFadden within a short period of time after the offense took place — Hodge's identification occurred within five minutes and Johnson identified McFadden within fifteen minutes. Their respective descriptions of McFadden, including his cartoon blanket and the handgun, were consistent with each other and with the evidence. And Johnson and Hodge were definitive in their pre-trial identifications. Finally, as we have recognized, "show-up" pre-trial identifications, conducted promptly after the commission of an offense — such as those conducted here — have been "consistently found to satisfy [] due process standards and not [to involve] 'undue suggestiveness.'" Stanley v. Cox, 486 F.2d 47, 51 (4th Cir. 1973). In these

8

circumstances, the district court did not err in deeming the challenged pre-trial identifications to be sufficiently reliable, and their admission at trial did not contravene McFadden's due process rights.

B.

Next, McFadden contends that his Sixth Amendment right to counsel was contravened when Woodward elicited incriminating jailhouse statements from McFadden, and that Woodward thus should not have been permitted to testify to those statements at McFadden's trial. An accused's Sixth Amendment right to counsel is violated when incriminating statements are "deliberately elicited" by the Government, secured after a defendant has been indicted and outside the presence of his counsel, and the statements are admitted at trial. Massiah v. United States, 377 U.S. 201, 206 (1964). The Government's utilization of testimony from such an informant, however, does not contravene a defendant's rights unless it is established that the informant was acting as the Government's agent when the jailhouse statements were secured. Such an informant's activity may only be ascribed to the Government if the prosecutors have intentionally placed the informant in the jail cell with instructions to elicit a confession, or if there has been an agreement promising consideration for a confession from a particular defendant. United States v. Love, 134 F.3d 595, 604

9

(4th Cir. 1998). The Sixth Amendment is not contravened where "by luck or happenstance [] the State obtains incriminating statements from the accused after the right to counsel has attached." Id. (citing Maine v. Moulton, 474 U.S. 159, 176 (1985)).

Assuming that Woodward acted deliberately in eliciting McFadden's jailhouse statements, however, the trial court specifically found that Woodward was not then acting on behalf of the Government and concluded that McFadden's Sixth Amendment rights were not violated. As the court noted, the Government denied that it had intentionally placed Woodward in McFadden's cell or that it had provided instructions to Woodward regarding McFadden. And, as McFadden's lawyer conceded in the district court, there was no evidence that the Government had promised Woodward anything in exchange for obtaining McFadden's confession. Although Woodward had assisted the prosecutors in other cases, his prior cooperation does not establish that he was acting as the Government's agent in this instance. See Love, 134 F.3d at 604. The evidence revealed that Woodward undertook his conversations with McFadden on his own initiative. Accordingly, the trial court did not err in declining to suppress Woodward's testimony.

IV.

Pursuant to the foregoing, we affirm McFadden's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

11